## Major, et al. v. Garrott, et al.

(Decided February 17, 1914.)

### Appeal from Christian Circuit Court.

1. Wills—Verdict—Evidence.—In a will contest, evidence examined, and held that a verdict sustaining the will was not flagrantly against the evidence.

2. Wills—Introduction of Other Wills—Notice—Section 604, Civil Code—Section 1649, Kentucky Statutes.—Where other wills of a testatrix are admissible for the purpose of showing a fixed purpose on her part with reference to the disposition of her estate, and are not offered for the purpose of comparison with the handwriting of the will in dispute, such wills should not be excluded on the ground that no reasonable notice of intention to introduce them was given to the adverse parties or their attorney, as provided by Section 604, Civil Code, with reference to the introduction of other hand-writings for the purpose of comparison.

3. New Trial—Grounds—Newly Discovered Evidence.—A new trial on the ground of newly discovered evidence will not be granted where the evidence is merely cumulative, and is not of such a decisive character as to render a different result reasonably certain.

C. H. BUSH, FOWLER & WHITE and BREATHITT & BREATHITT for appellants.

J. W. DOWNER, TRIMBLE & BELL and JOHN B. RUSSELL for appellees.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Affirming.

This is a contest over the will of Mary Ann Garrott, who died in the month of April, 1912, a resident of Christian County, Kentucky. The will in question was probated by the County Court of Christian County. On appeal by the contestants to the Circuit Court the jury found in favor of the will. The contestants appeal.

The will is dated December 1, 1902. After bequeathing $200 to her companion, Miss Clark, testatrix devised her personal property to all her nephews and nieces, naming them. She then devised her farm, consisting of about 450 acres, to her only living brother, Edmond H. Garrott.

The propounders proved that the will in question was wholly in the handwriting of the testatrix, and was signed by her. They also proved the signatures of C.

W. Cherry and John D. Cheek, who were witnesses to the will and who were dead at the time of the trial.

The contestants are certain nephews and nieces of the testatrix, being children of her deceased brothers and sisters. According to their testimony, the testatrix sustained a fall about 31 years prior to the trial. As a result of this fall her fingers were stiffened, and after that time she wrote with great difficulty. In the opinion of several of the witnesses who had seen her write and were familiar with her handwriting, the will was neither written nor signed by her, though some of the witnesses admitted that it resembled her handwriting. These witnesses also testified that testatrix was a nervous, excitable woman and frequently expressed the fear that she would be sent to the poor house or the asylum. On one or two occasions she told certain witnesses that if she had not gone to the home of her brother and signed certain papers she would be thousands of dollars better off. In the opinion of these witnesses, she did not know what property she had. When her nieces and nephews would call, she was not able to recognize them until someone would call their names and tell her who they were. During the latter part of her life her mind began to fail. At the time of the execution of the will she did not have mind and memory enough to know the nature, value and extent of her estate or the natural objects of her bounty and her obligations to them, or to dispose of her estate according to a fixed purpose of her own. One or two witnesses testified that Edmond H. Garrott, the devisee of the land, had frequent private conversations with the testatrix. After his departure her frame of mind was worse, and she would frequently cry. Some two or three witnesses testified that the testatrix was susceptible to influence, and that anyone could have gotten all the property that she had. Other witnesses testified that testatrix frequently announced that she wanted her nephews and nieces to have all she had. From about 1907 to 1912 testatrix was confined to the house, and was unable thereafter to attend to any business at all.

For contestees it is shown that testatrix was one of a family of five children—three girls and two boys. Her father had a large estate. Edmond H. Garrott was fifteen years younger than the testatrix. The older children married and left the paternal roof, leaving testatrix and Edmond H. Garrott and their parents occupy-

ing the homestead. The affection between testatrix and Edmond was very strong. Testatrix took care of him, taught him his lessons, and occupied the place of a mother to. him. Prior to the will in question, testatrix executed two other wills, one in the year 1885, and the other in the year 1900. These wills are substantially the same as the one in question. In each it is provided that Edmond H. Garrott is to have the land, though it is further provided that if he should die before the testatrix, the land is to go to his children. Edmond H. Garrott says that he never at any time attempted to influence his sister in the disposition of her estate. He did not know that she had made such a will, and was not present when it was written or consulted with in regard to it. A number of witnesses testified that testatrix's handwriting was not affected by her fall to any great extent. On the contrary, she continued to do a great deal of writing for a number of years. Testatrix was a secretive woman, and talked but little about her estate. She was a strong-minded woman, who had a will of her own. She conducted her own household and attended to her business affairs for herself. At the time the will in question was made she knew exactly what estate she had, the number and names of her nieces and nephews, and her obligations to them, and was fully capable of disposing of her estate according to a fixed purpose of her own.

Contestants insist that the verdict of the jury is flagrantly against the evidence. About 18 witnesses testified for contestants. A majority of them are the contestants themselves. On the other hand, about 30 witnesses testified for the propounders. Several of these witnesses are the children of Edmond H. Garrott. We have carefully read the evidence. Had the jury believed the witnesses for contestants, they would have been fully justified in finding against the will. On the other hand, if they did not believe these witnesses, and believed the witnesses for the propounders, it was their duty to sustain the will. The whole case, therefore, turns on the credibility of the witnesses, a question peculiarly within the province of the jury. There being a large number of witnesses on each side, and the evidence bing conflicting, we cannot say that the finding of the jury is flagrantly against the evidence.

Another error relied on is the admission of the other wills of testatrix without the notice required by section

604, Civil Code, and 1649, Kentucky Statutes. The material part of that section is as follows:

"That in any action, prosecution or proceeding, civil or criminal, which is now pending or may be commenced hereafter, upon a dispute as to the genuineness of the handwriting of a person, other handwritings of such person, though not in the case for any other purpose, may be introduced for the purpose of comparison by witnesses with the writing in dispute; and such writings, and the testimony of witnesses respecting them, may be submitted to the court or jury as evidence concerning the genuineness of the writing in dispute: Provided, That—

"1. The genuineness of such writings shall be proved, to the satisfaction of the judge, by other than opinion evidence.

"2. It must be proved, to the satisfaction of the judge, that they were written before any controversy arose as to the genuineness of the writing in dispute, and that no fraud was practiced in their selection.

"3. A party proposing to introduce such writings must give reasonable notice of his intention to the opposite party or his attorney, with reasonable opportunity to examine them before commencement of the trial."

It will be observed that the foregoing section provides that upon a dispute as to the genuineness of the handwriting of a person, other handwritings of such person, though not in the case for any other purpose, may be introduced for the purpose of comparison by witnesses with the writing in dispute, and such writings, with the testimony of the witnesses respecting them, may be submitted to the court or jury as evidence of the genuineness of the writing in dispute. Prior to the enactment of this section, other handwritings of the person whose handwriting was in dispute were not admissible for the purpose of comparison, either by expert witnesses or by the jury. To this rule, however, there were two exceptions: (1) Where the writings are of such antiquity that they cannot be proved in the ordinary way, and yet are not so old as to prove themselves. Here other writings may be produced which are admitted to be genuine or proved to have been acted upon and recognized as such by the parties, and persons skilled in hand-writing, termed experts, may be called upon to compare them and testify concerning the genuineness of the contested

instrument. (2) Where other writings clearly proved are already in the case and before the jury, the jury may compare them. McAlister vs. McAlister, 7 B. Mon., 269; Hawkins vs. Grimes, 13 B. Mon., 206. The manifest intention of the legislature was to authorize the introduction of other handwritings, though not in the case, for the purpose of comparison by witnesses with the writing in dispute. In other words, the object of the section was to do away with the rule theretofore prevailing that other handwritings were not admissible for the purpose of comparison, either by the witnesses or by the jury, except in the instances referred to. It was not contemplated that a notice should be required where the other handwritings were properly admitted for another purpose. In discussing the fact that even under the rule prevailing before the enactment of the statute referred to, the jury might compare with the disputed writings other writings clearly proved, already in the case and before the jury, the court, in the case of McAlister v. McAlister, *supra,* said:

"The reason for this is obvious. As the jury have a right to look at such writings for one purpose, there is no way to prevent them from using them for the purpose of comparison; and any attempt to embarrass them, with impracticable distinctions as to the use they were to make of them, would be productive of more evil than good."

In the present case, the other wills of the testatrix were clearly proved, and were clearly admissible to show a fixed purpose and a long-cherished intention on the part of the testatrix to devise her property to her brother Edmond. Barlow, et al. v. Waters, 16 Ky. L. R., 426; Harrison's Will, 1 B. Mon., 351; Carico v. Neal, 1 Dana, 162. Being admissible for this purpose, and not having been admitted for the purpose of comparison either by the witnesses or by the jury themselves, and no witness having compared them with the will in question, no notice of an intention to introduce such writings was necessary, even though the jury may have compared the writings with the will in question, a fact which does not appear.

Contestants also ask for a reversal because the trial court erred in refusing a new trial on the ground of newly discovered evidence. We have carefully read the evidence in question. In the main it is merely cumulative, and not of such a decisive character as to render a

different result reasonably certain. That being true, a new trial was properly refused. Weeks, by &c. v. Mc-Dowell Construction Co., &c., 153 Ky., 691; Traynor **v.** Com., 149 Ky., 462.

Judgment affirmed.