## Inter-Southern Life Insurance Company v. Cooke.

(Decided January 31, 1919.)

### Appeal from Daviess Circuit Court.

1. Insurance—Life Insurance—Forfeiture—Waiver.—Where a check for a premium was accepted on the condition that if it was not paid on presentation the policy should lapse, and the company treated the policy as lapsed only on the condition that the bank, on which the check was drawn, was not in error in refusing payment, it waived its right to insist on the forfeiture if, as a matter of fact, the payor had in the bank sufficient funds to meet the check, and the bank was therefore in error in refusing payment.

2. Appeal and Error—Findings by Court—Conclusiveness.—Where in a common law action, the law and facts are submitted to the court, its finding of fact will be given the same effect as the verdict of a properly instructed jury, and will not be reversed unless flagrantly against the evidence.

3. New Trial—Newly Discovered Evidence—Sufficiency.—A new trial for newly discovered evidence was properly refused where the evidence was mainly cumulative and not of such a decisive character as to render a different result reasonably certain.

4. New Trial—Grounds—Surprise—Necessity for Objection at Trial.—A reversal will not be granted on the ground of surprise, where there was no objection to the evidence alleged to constitute surprise, and no motion was made for the postponement or continuance of the case.

HELM BRUCE and BRUCE & BULLITT for appellant.

LOUIS I. IGLEHART for appellee.

Opinion of the Court by William Rogers Clay, Commissioner—Affirming.

Plaintiff, Norburn E. Cooke, brought this suit against the Inter-Southern Life Insurance Company to recover on a policy insuring the life of his wife in his favor for $1,000.00. The law and facts were submitted to the court and a judgment rendered in favor of plaintiff. Defendant appeals.

The company defended on the ground that the policy had lapsed for the non-payment of the monthly premium due January 24, 1917, and was not in force when Mrs. Cooke died on May 12, 1917. Plaintiff replied that the premium was paid within the thirty days period of grace allowed by the policy, but that if not paid within that time, it was subsequently accepted by the company, and that the failure to pay within the thirty days was waived.

The policy was issued on November 24, 1913. On the same day, a policy insuring the life of plaintiff was also issued. The monthly premium on the latter policy was $2.24, while the monthly premium on the policy on the life of Mrs. Cooke was $1.87. Mrs. Cooke, however, had borrowed $16.00 on the policy and the monthly interest thereon was eight cents. Thus the amount due each month on the latter policy was $1.95, and the amount due monthly on the two policies was $4.19. At the time of the alleged lapse on January 24, 1917, three full annual premiums and two monthly premiums had been paid.

The trial court's findings of fact and conclusions of law are as follows:

## "Findings of Fact.

"The findings of fact are in words and figures as follows:

"The court finds from the evidence in this case the facts to be as follows:

"(1)   That for a considerable period prior to the first of January, 1917, the monthly premium due upon the policy involved in this case was paid by means of checks that had been executed by the plaintiff, N. E. Cooke, the beneficiary, and made payable to some bank in El Paso, Texas, and that such checks had been forwarded to the defendant at its office in Louisville at such late date as to preclude the possibility of payment to the

company by the El Paso bank within the days of grace fixed in the policy.

"(2)    That at the time of the issual of the check by said N. E. Cooke of date February 17, 1917, and at the time that it was presented to the El Paso Bank for payment on March 3, 1917, said N. E. Cooke had in said bank more than sufficient funds to meet its payment.

"(3)    That the defendant company, with knowledge of the fact that the payment of that check had been refused by the bank, accepted from said bank payment of the check by cashing and retaining the proceeds of the draft for the amount of the check that was issued by the bank to the defendant company of date March 26, 1917.

"(4)    That the defendant company with like knowledge as to the non-payment of the check of date February 17, 1917, accepted the check of said N. E. Cooke of date March 17, 1917, upon the Security Trust & Savings Bank of El Paso, in payment of the premium due on February 24, 1917, and collected said check from said bank in El Paso on March 26, 1917, out of the funds of said Cooke in said bank and retained said sums so collected without ever having made any offer to return same to said Cooke or the assured until April 20, 1917, after defendant company had been notified by said N. E. Cooke on April 18, 1917, that the assured was then in a dying condition.

"(5)    That on April 20th, said N. E. Cooke sent to the company by registered mail the sum of $4.19 ostensibly in payment of the premium due in April, 1917, and this sum was received by the company on April 20, 1917, and returned to him on the next day by check which he received but refused to accept.

"(6)    That on April 6th said N. E. Cooke purchased from the money order department of the post office in Owensboro, a postal money order for $4.19, payable to the defendant company to be applied to the payment of the premium due March 24, 1917, which he attempted to send to the company by mail but which, the evidence shows, was never received by the company.

"(7)    That the defendant company never, at any time, made any declaration of forfeiture of the policy or did any act indicating a fixed purpose to forfeit same until the tender of repayment made by it to N. E. Cooke, on April 20, 1917.

"Conclusions of Law.

"(1)   From the foregoing facts the court concludes as matter of law that the defendant did not have the right to forfeit the policy by reason of the failure of the bank in El Paso to make payment, on March 3, 1917, of the check of date February 17, 1917.

"(2)   That, if it had had any such right (the defendant waived its right of forfeiture by its failure to promptly avail itself of that right by declaring such forfeiture), and, second, by its subsequent collection of the check of February 17, 1917, and by its collection of the check of date March 17, 1917 (given in payment of premium due in February 1917), with the full knowledge of the default in payment of the preceding check of February 17, 1917, and it is now estopped, under the facts and circumstances of this case, to rely upon any rights that it may have had of forfeiture by reason of the default of payment of the check of February 17, 1917.

"These conclusions obviate any necessity for the consideration of the questions, made in the pleadings and evidence, as to whether the assured under the terms of the policy was entitled to extended insurance sufficient to cover the period to her death."

The company relies upon the following facts to show that there was no waiver of the forfeiture resulting from the non-payment of the check given for the January premium: Plaintiff had been an agent and manager of the company and was acquainted with its method of doing business. On February 22, 1917, the company acknowledged receipt of plaintiff's letter and check for $4.19, and enclosed premium receipt to plaintiff. On the back of this premium receipt was the following endorsement:

"Conditions.

"If this premium is paid by check or note and said check is not paid on presentation, or said note is not paid at maturity, then the policy mentioned in this receipt shall lapse and become null and void, and all premiums paid on its account shall be forfeited to the company, except as provided in the policy."

The check was deposited by the defendant in its bank in Louisville, but in due course was returned by the El Paso bank unpaid and marked, "Not sufficient funds." On March 13, the company wrote the following letter to plaintiff:

"We regret very much to advise you that your check of February 17th, tendered in settlement of January premium under the above policies, has been dishonored at the bank on account of insufficient funds. Without this payment the policies, of course, will lapse, and it will be necessary for us to have a satisfactory proof of health before they can be reinstated. The bank may be in error in returning the check and if this be true, please take the matter up with them at once and advise us accordingly and we will be glad to deposit the check again."

A few days later the company received from the plaintiff the following letter dated March 17th:

"Referring to your letter as above, am sure there was a mistake at the bank, as I have had sufficient means to pay these premiums, so if you will find enclosed check for the February premiums on the above policies and also you can present the check for payment."

On March 21st, the company wrote the following letter to the Security Trust & Savings Bank at El Paso, Texas:

"We enclose a check drawn on your bank and returned to us unpaid. I enclose a stamped envelope and will thank you to return this check to us after having it certified, if that can now be done, and will you please advise us at the same time if this check should have been protested when first presented. Mr. Cooke thinks that it was returned unpaid through some accident for which he is not responsible and it is a matter of some importance in view of the fact that the policy of insurance is affected. We shall, therefore, appreciate your reply and a prompt return of the check."

Thereafter, the company received the following reply from the El Paso Bank, dated March 26th:

"We have your favor of the 21st, in re policy Cooke. Check for $4.19 was enclosed and same is good at present. We have drawn our draft for that amount, and are enclosing it herewith. Beg to advise that at the time this check was presented, when we marked it 'Not sufficient funds.' Mr. Cooke's account was overdrawn and we did not feel justified in paying further overdraft. Since then he has made deposit and at present we are pleased to remit for the check."

The bank's draft for $4.19, referred to in the letter, was received and collected by the company. Under date of April 4th, the company wrote the following letter to plaintiff:

"I regret to be obliged to advise that the Security Trust and Saving Bank at El Paso tells us that while your account is now good for the amount of recent check you sent, it was overdrawn at the time you sent us the check or rather at the time the check was returned to them for payment, and until we are satisfied that the bank was really at fault, it seems that the insurance under the above policies has really lapsed because of non-payment and we are therefore to hold your payments in suspense for the present.

"Two partial examination blanks are enclosed. If you wish to make application for reinstatement have this filled out by Dr. Wm. L. Brown, who is our examiner at El Paso."

Plaintiff had left El Paso before the above letter was received there, but a copy of it was sent to him at Owensboro in a letter of April 16th. On April 18th, plaintiff called at the company's office in Louisville and exhibited the above letter. At that time he stated that he could not submit an application for the reinstatement of his wife's policy because she was then at the point of death. He also said that the bank at El Paso was in error in stating that his account was not good when the check was presented, and that his bank book and other papers would show that this statement was correct. The company's actuary then told him that if the bank was in error in regard to the matter it would be glad to have the policy reinstated. Plaintiff replied that he thought his wife would die within the course of a few days and that the reserve on the policy was sufficient to keep the policy in force until her death. On April 20th, the company wrote to plaintiff, stating that inasmuch as no application had been made for the reinstatement of the policy, the company did not feel justified in holding in suspense the $8.35 paid by him and enclosed check for that amount. Thereafter, the company received from plaintiff a letter dated April 19th, enclosing $4.19 to pay premiums on policies for the month of April, 1917. On April 21st, the last mentioned payment was returned to plaintiff. Thereafter, the two checks sent to plaintiff were returned by him to the company, and the company, on April 25th, wrote plaintiff that these checks were held subject to his orders. It was further shown by the company that it kept a "Suspense Account," wherein payments subject to a return were held pending final set-

tlement, and that the draft received from the El Paso bank, as well as the proceeds of the checks sent for the purpose of paying the subsequent premiums, were deposited to that account. The bank's statement of plaintiff's account shows that when the check for the January premium was presented on March 3rd, he had to his credit only $4.00, and that the check, therefore, would overdraw his account to the extent of nineteen cents. Plaintiff, however, testified that a deposit of $9.00, appearing on the bank's statement to have been made on March 13th, was in fact made on February 10th.

It is argued on behalf of the company that the policy lapsed for the non-payment, on presentation, of the check given for the January premium, and that its subsequent acceptance of the defaulted premium and other premiums was not absolute, but conditional, and plaintiff, having been advised of the condition, there was nothing in the conduct of the company to·mislead him to his prejudice, or to work a waiver of the forfeiture. With this contention, we cannot agree. Though it be conceded for the purpose of argument, that no affirmative action was necessary on the part of the company in order to declare a forfeiture, yet where the company did act, its conduct should have been consistent with the claim of absolute forfeiture, and not such as to indicate that the forfeiture would not be relied on. Here, the company did act, and the question is, what was the effect of its action? After the return of the check for the January premium, it did not notify plaintiff that the policy had lapsed for non-payment of the check on presentation, but wrote him as follows: "Without this payment, the policies, of course, will lapse and it will be necessary for us to have a satisfactory proof of health before they can be reinstated. The bank may be in error in returning the check, and if this be true, please take the matter up with them at once and advise us accordingly, and we will be glad to deposit the check again." Fairly construed, this language plainly meant that no forfeiture would be insisted upon if, as a matter of fact, the non-payment of the check was due to an error on the part of the bank. Insisting that there was an error on the part of the bank, plaintiff forwarded his check for the February premium and directed the company to present his check for the January premium for payment. The company sent the latter check to the bank to be certified. Instead of cer-

tifying it, the bank forwarded its draft to pay same. At the same time, the bank stated that when the check was originally presented, plaintiff's account was overdrawn. Nine days thereafter, the company wrote plaintiff that until it was satisfied that the bank was really at fault, it seemed that the insurance had really lapsed because of non-payment, and that it would hold his payments in suspense. At the same time, it enclosed application blanks for reinstatement. Not until then did the company claim that the policies had really lapsed, and even then it did not insist on the lapse, if the bank had erred in failing to pay the check for the January premium. In other words, it based its whole right to lapse the policy on the fact that no error had been committed by the bank. That being true, it treated the lapse as merely conditional, and was not entitled to insist thereon, if, as a matter of fact, the bank was in error. This being a common law action and the law and facts having been submitted to the court, its finding of fact will be given the same effect as the verdict of a properly instructed jury and will not be reversed unless flagrantly against the evidence. Jolly's Admr. v. First National Bank, 158 Ky. 505, 165 S. W. 677. The court found, as a fact, that the bank had sufficient funds belonging to plaintiff to meet the check in question. On this question, the court considered the statement taken from the books of the bank and the deposition of plaintiff, and we are not prepared to say that the court's finding is flagrantly against the evidence. From its finding, it necessarily follows that the bank was in error in refusing to pay the check for insufficient funds, and the company having led plaintiff to believe that it would not insist upon the forfeiture if that were true, it cannot now defeat the policy on the ground of forfeiture.

But it is insisted that a new trial should have been granted on the ground of newly discovered evidence. The motion was supported by affidavits to the effect that the plaintiff deposited with the El Paso bank, $5.00, and only $5.00, on February 10th, and that the deposit of $9.00, claimed by plaintiff to have been made on February 10th, was in fact made on March 13th. It appears, however, that the cashier of the bank had already testified that the records of the bank showed that the sum of $9.00 was deposited on March 13th. Under these circumstances, the newly discovered evidence was mainly cumulative,

and not of such a decisive character as to render a different result reasonably certain. That being true, a new trial was properly refused. Major v. Garrot, 157 Ky. 468, 163 S. W. 463. Indeed, the argument that defendant was entitled to a new trial seems to be based on the ground of surprise, but clearly this ground is not available, in view of the fact that no objection was made to the evidence alleged to constitute surprise, and no motion was made for the postponement or continuance of the case. Hudson Engineering Co. v. Shaw, 167 Ky. 27, 179 S. W. 1083.

Judgment affirmed.