### Gray-Von Allmen Sanitary Milk Company v. McAfee.

(Decided April 30, 1929.)

(As Modified, on Denial of Rehearing, June 4, 1929.)

LAWRENCE S. GRAUMAN for appellant.

NATHAN KAHN for appellee.

OPINION OF THE COURT BY COMMISSIONER HOBSON—
Affirming.

Appellant owns and conducts a milk business in
Louisville, and in this business employs a number of
teams. On the morning of December 8, a wagon was
loaded at the place with refuse and a driver was placed
in charge of the team. When he reached the corner of
Fifth and Kentucky streets the team took fright, either
from a car driven rapidly by it or from some obstruc-
tions in the street. They started off in a brisk trot, which
increased to a run when they went across the street rail-
way tracks at Fourth street. Third street is a boulevard,
and the driver was unable to check them. They continued
to run on and crossed Second street. Appellee, McAfee,
had driven up in his car to First street, which is a boule-
vard, and was sitting there in his car waiting for the
signal. The team ran violently into his car, the tongue
of the wagon striking the car near the center, throwing
McAfee over the front of the car, and knocking the coupe
about a hundred feet. The team then ran into a tree on
the other side of the street, one horse being on one side
of the tree and the other on the other side, and so it was
stopped. McAfee was painfully injured, and he brought
this action to recover for his injuries, the damages to his
car, and his personal expenses. On the trial of the case
he recovered a verdict and judgment for $5,000. The de-
fendant appeals.

McAfee's personal expenses were about $350, and
the damage to his car was about the same. The remain-
der of the verdict is for his personal injury. It is earn-
estly insisted that the defendant should have had a per-
emptory instruction; that the court misinstructed the
jury; and that the verdict is excessive.

There was evidence from several persons who saw
the runaway that the driver was making little effort to
stop the team; and while he testifies otherwise, in view of

the fact that the team ran for four squares, the court is unable to say that the question was not one for the jury. It is complained of the instructions that the court did not present the defendant's side of the case. The court gave the jury these instructions:

"1. It was the duty of the driver of defendant's wagon, when he saw, or by the exercise of ordinary care and skill could have discovered, that his team was frightened and that there was danger of their becoming unmanageable (if this was so), to exercise ordinary care and skill to reduce said team under reasonable control and thereby avoid collision with other vehicles on the highway.

"2. If the jury believe from the evidence that at the time and place referred to in the evidence defendant's driver failed to exercise his duty as set forth in the first instruction, and such failure on his part (if any there was) was the proximate cause of the collision complained of, and the plaintiff was thereby injured and his automobile damaged, then the law of the case is for the plaintiff, and the jury should so find. But unless they so believe, the law is for the defendant, and the jury should so find "

The defendant complains that the court refused to give the following instruction asked by it:

"3. The court instructs the jury that if they find from the evidence that the team of horses or either of said horses as a result of being frightened or scared, through no fault of the defendant, became unmanageable or uncontrollable and as a result thereof collided with the automobile of the plaintiff and the plaintiff was thereby injured, then the law of this case is for the defendant, and the jury should so find."

While it is true that the owner of the team is not liable for damages done by it when it becomes frightened through no fault on his part, this is the necessary meaning of the instructions which the court gave, for under the instructions that the court gave there could be a recovery for the plaintiff only if there was a failure of the driver to exercise ordinary care to avoid the collision, and the jury were plainly told that unless they so believed they should find for the defendant. No other ques-

tion but the negligence of the driver was submitted to the jury.

In giving the measure of damages the court told the jury that in addition to compensation for his pain and suffering they might find for the plaintiff such further sum as they might believe from the evidence would fairly and reasonably compensate him for the diminution of his power to earn money, if any, as the direct result of his injuries. The defendant earnestly insists that there was no proof that plaintiff's injuries were permanent and that this instruction was erroneous. The proof showed that the plaintiff was taken to a hospital at the time of the accident and there was examined by X-ray. No bones were found broken, but he was much bruised about the right arm, the back of the shoulders, and the spine. He suffered much from these injuries. After he was discharged from the hospital a knot came upon his arm and he returned to the hospital. The doctors removed this knot from the bone of his arm. It was a process thrown out by the bone of the arm, possibly when the bone was cracked but not broken. After this operation he continued as before to have little use of the arm. He suffered intensely with pain in the back and had been unable up to the trial to follow his usual occupation. Up to the trial, under the evidence, his power to follow his ordinary occupation had been seriously impaired. He had lost 20 pounds in weight; his pulse was between 95 and 100, when normally it should be about 72; he was restless and could not sleep at night, and any exertion fatigued him.

Dr. J. H. Heuser, who had treated the plaintiff since he was hurt, testified at the trial in June, six months after he was hurt and four months after the last operation, that in his judgment the plaintiff would have 15 or 20 per cent. impairment in the use of his arm and that the condition was permanent, because he should have recovered normal use of the arm in this time, if he was going to get complete use of it. Dr. W. E. Summerville, who had also treated him, testified to the same effect, and, being pressed for his reasons for so concluding, said this:

"I base my opinion on the following facts: In the operation there, the muscles have been destroyed, or at least split, leading down to this bone, and the chiseling off of this new growth; it is bound to leave

the arm impaired to a certain extent, because those muscles do not regenerate; they are replaced by scar tissue."

. There was, therefore, sufficient evidence that the injury was permanent to take this question to the jury. The instruction the court gave only allowed the jury to find compensation "for the diminution of his power to earn money, if any, as the direct result of said injuries." This confined the recovery to his disability directly resulting from his injuries, and left the jury to determine how much his power to earn money had been impaired and how long this impairment would naturally continue. The court is unable to see that the defendant's rights were substantially prejudiced by this. No instruction was given as to lost time. The only question submitted to the jury was the reasonable compensation for such impairment of the plaintiff's power to earn money as had directly resulted from the injury; and clearly, under the evidence, no substantial right of the defendant was prejudiced. Central Consumers' Co. v. Booher, 107 S. W. 198, 32 Ky. Law Rep. 794; L. & N. R. Co. v. Marshall, 110 S. W. 885, 33 Ky. Law Rep. 321; L. & N. R. Co. v. Brown (Ky.) 113 S. W. 465; Blue Grass Traction Co. v. Ingles, 140 Ky. 488, 131 S. W. 278. In these cases a similar instruction was sustained.

In Augustus v. Goodrum, 224 Ky. 558, 6 S. W. (2d) 703, the judgment was reversed on account of a similar instruction to the jury. The court said: "Plaintiff made no claim for loss of time, and no instruction there was given, but under the instruction on the measure of damages the jury could fix the beginning of the impairment of his power to earn money at the date of the injury. This would not render the instruction erroneous, since no question as to double damages would arise; but the instruction was erroneous in that it failed to limit the period during which compensation might be allowed for temporary impairment of plaintiff's power to earn money to the period between the date of the injury and the time when a complete cure would be effected."

In that case the proof was not satisfactory, that plaintiff had sustained much injury, and there was no evidence that his injury was permanent. Here the plaintiff's injured condition had continued until the trial and the doctors, who had treated him, were unable to say whether it would ever be relieved; each said that in his

judgment the injury was permanent. If the court had added to the instruction the words indicated in the opinion above quoted, it would in no wise have affected the result, for there was no evidence when a cure could be effected. The failure to so qualify the instruction was prejudicial when only a temporary injury was shown, as in that case; under the proof here it was not prejudicial.

In the Code it is provided:

"The court must, in every stage of an action, disregard any error or defect in the proceedings, which does not affect the substantial rights of the adverse party; and no judgment shall be reversed or affected by reason of such error or defect." Section 134.

"No exception shall be regarded, unless the decision to which it relates be prejudicial to the substantial rights of the party excepting." Section 338.

"Nor shall a judgment be reversed or modified, except for an error to the prejudice of the substantial rights of the party complaining thereof." Section 756.

The purpose of this thrice-repeated provision is to avoid the uncertainty and undue lengthening of litigation by reason of matters not going to the substantial rights of the party complaining. A party is entitled to a substantially fair trial, and when a case has been heard on the merits, and no substantial error has been committed, the judgment must stand.

In view of the clear proof of the violence of the blow which the plaintiff received from the tongue of the wagon the suffering he endured, and the undisputed proof as to his condition just after the injury and while in the hospital, the court is unable to say that the verdict of the jury for about $4,000 for his personal injuries is excessive. While complaint is made that the court erred in overruling the motion for a continuance and in overruling certain objections to the testimony, and to the conduct of the counsel for plaintiff in his argument to the jury, none of these matters went to the substance of the case, or on the whole case were prejudicial to the substantial rights of appellant.

Judgment affirmed.