## Murphy v. Phelps et al.

(Decided December 1, 1931.)

G. M. JOHNSON for appellant.

O. H. ANDERSON for appellee City of Hopkinsville.

BREATHITT & BREATHITT for appellee Phelps.

OPINION OF THE COURT BY JUDGE CLAY—Affirming.

E. P. Murphy sued J. T. Phelps, a policeman, the City of Hopkinsville, and the United States Fidelity & Guaranty Company, surety on Phelps' bond, for assault and battery. The demurrers interposed by the city and the guaranty company were sustained, and the petition

dismissed as to them. The case went to trial as to Phelps, and resulted in a verdict and judgment in his favor. From that judgment, and from the order dismissing the petition as to the city, this appeal is prosecuted.

The court did not err in sustaining the city's demurrer to the petition. No rule of law is better settled than that a municipality is not liable for the torts of its agents while exercising a purely governmental function, White v. City of Hopkinsville, 222 Ky. 664, 1 S. W. (2d) 1068, and the fact that Phelps had executed to the city a bond for the faithful performance of his duties as patrolman did not have the effect of changing the rule.

We give a brief summary of the evidence. There was a street carnival in Hopkinsville. Early in the afternoon of April 16, 1929, Murphy attended the carnival. In connection with the show, there was a doll rack at which balls were being thrown. The price was three throws for five cents. Shortly after Murphy's arrival, Phelps appeared. Murphy says that Phelps offered to bet 50 cents that he could knock all the dolls down. Murphy accepted the bet. Phelps failed in the attempt and Murphy said, "Pay me." Phelps became angry and threatened to arrest Murphy. They then began to swear at each other. At this juncture, the operator asked the crowd to get back, and requested Murphy to move away. In company with a man named Pendleton, Murphy walked away for a distance of about 25 feet. At the same time he again demanded that Phelps pay him. Phelps continued his throwing, and in a few minutes started away and passed near Murphy, who had turned and started toward the carnival grounds. As Murphy turned around, Phelps hit him on the ear with his pistol. He had a knife at the time, but did not attempt to use it, or to strike Phelps with his fist. He was severely hurt by the blow, and his leg was also broken. He was then carried to the police station in the patrol wagon, where he gave the officers $7, and a check for $10.50. He did not appear in court, and plead guilty. Late in the afternoon he was released and walked down Seventh street, where he called a taxi and rode home. Though he had taken two drinks that morning he was not drunk at the time of the assault. Murphy was corroborated by two or three other witnesses, who claim to have been present. On the other hand, Phelps and his witnesses testified that Phelps made no bet with Murphy. Murphy was drunk, disorderly, and quarrelsome, so much so, that Pendleton

had to take him away. When informed that Phelps was an officer, Murphy said, "To hell with the law," or "To hell with him." After he stopped throwing, Phelps started off the grounds. In the meantime, he was informed that Murphy had a knife. On going about 12 steps he met Murphy. Murphy said, "You owe me 50c and you are going to pay it." Phelps said, "I don't owe you anything, and I am going to arrest you." At that time Murphy had his right hand in the bib of his overalls, and struck at Phelps with his left hand. Phelps dodged the lick, jerked his gun out, and slapped Murphy with a pistol on the side of the head. In striking Murphy, Phelps thought it was necessary for his own protection. Murphy fell to the ground and was picked up by a man by the name of Drake. The patrol wagon was called and carried Murphy to the police station. Murphy was locked up in a cell, and later on he pleaded guilty before the police judge of being drunk. He was fined $10 and costs, the whole judgment amounting to $17.50.

It is first insisted that the court committed several errors in excluding evidence. In reply to this contention, it is sufficient to say that in no instance was the offered evidence accompanied by an avowal of what the witness would state, and for that reason the errors, if any, cannot be considered. Hack v. Lashley, 197 Ky. 117, 245 S. W. 851; Westchester Fire Ins. Co. v. Crume, 223 Ky. 707, 4 S. W. (2d) 716.

Complaint is made that the court improperly permitted Phelps to testify that he had been warned that Murphy had a knife. We need go no further than to say that, even if the evidence was not properly admitted, it was in no sense prejudicial to appellant, as he admitted he did have a knife.

The evidence of certain witnesses that appellant was drunk was properly admitted. Stating that one is drunk is not a mere conclusion. On the contrary, drunkenness is so common that it is a question of fact as to which most every one, and particularly police officers, may testify.

The further point is made that the court erred in not excluding from the courtroom the witnesses, George Gee, acting chief of police of the city of Hopkinsville, and J. S. Fritz, its police commissioner. The words of the Code are that "if either party require it, the judge may exclude from the courtroom any witness of the

adverse party not at the time under examination, so that he may not hear the testimony of the other witnesses." Civil Code of Practice, sec. 601. In construing this section, we have uniformly ruled that the exclusion of witnesses is a matter that addresses itself to the discretion of the trial court, and that a case will not be reversed unless it appear that such discretion has been abused. Matthews' Adm'r v. L. & N. R. Co., 130 Ky. 551, 113 S. W. 459; Gilbert v. Commonwealth, 111 Ky. 793, 64 S. W. 846, 23 Ky. Law Rep. 1094. As the evidence of Gee and Fritz related only to appellant's drunkenness, and whether or not his leg was broken at the time he was admitted to the city jail, we are unable to perceive in what way appellant was prejudiced by the failure of the court to exclude them from the courtroom. Certainly there was no abuse of discretion.

We have reviewed the instructions with great care, and find that they fairly presented the only issues to be tried. That being true, it was not error to refuse the offered instructions submitting the same issues, or the numerous other instructions that were so abstract in form and remote in their application as to have but little bearing on the questions to be decided. Ehremann v. Old F. G. Walker Distillery Co., 197 Ky. 244, 246 S. W. 789; Brown v. Wilson, 1 Litt. 229; Mann v. Watson, 214 Ky. 729, 283 S. W. 1052.

It also is urged that the court should have given an instruction on punitive damages. The rule in this state is that the court is not bound to give any instructions in a civil case unless they be reduced to writing and duly requested. Charles Taylor Sons Co. v. Hunt, 163 Ky. 120, 173 S. W. 333. The court did instruct on compensatory damages, and that instruction was correct as far as it went. Not having offered an instruction on punitive damages, appellant is not in a position to complain of the court's failure to give such an instruction. Gray-Von Allmen Sanitary Milk Co. v. McAfee, 229 Ky. 444, 17 S. W. (2d) 231.

Lastly, it is claimed that the court erred in not granting a new trial on the ground of newly discovered evidence. Not only was the evidence relied on merely cumulative, but it was not of such a decisive character as to render a different result reasonably certain. That being true, a new trial was properly refused. Ripperdan v. Scott, 1 A. K. Marsh. 151; Inter-Southern Life Ins. Co. v. Cooke, 183 Ky. 109, 209 S. W. 45.

344

On the whole, we conclude that the evidence was sufficient to sustain the verdict.

Judgment affirmed.