## Reynolds v. Coburn et al.

Feb. 28, 1941.

H. H. Ramey for appellant.

Davis M. Howerton for appellees.

OPINION OF THE COURT BY JUDGE FULTON—Affirming.

This appeal is from a judgment for $15,000 for the wrongful death of William Coburn in an action filed by his widow and infant children against the appellant, Franklin Reynolds, Jr. The action was filed in the Montgomery Circuit Court but a motion of the appellees for a change of venue was sustained and the venue of the action changed to Bath County.

At the time in controversy, March, 1936, the appellant was County Attorney of Montgomery County and, in connection with police officers of Mt. Sterling, was investigating a theft from the railroad station in that city. Police officers had arrested a young man, Paul Vinson, an employee of Coburn, and had taken him to the office of appellant in Mt. Sterling, the office being upstairs. Vinson had made, and was preparing to sign, a statement implicating Coburn in the robbery when Coburn, who operated a filling station in Winchester and who had heard that Vinson was in custody, came into appellant's office where the appellant and Officers Neal and Turpin were questioning Vinson. It may be fairly inferred from the evidence that Coburn was drinking heavily, if not drunk. Coburn demanded the right to be present at the questioning or to take Vinson away with him and a controversy ensued, after which Coburn was arrested by Officers Neal and Turpin on the basis of the information received from Vinson as to his participation in the robbery. It appears that Coburn, who was a very large and powerful man, 33 years of age, was preparing to resist arrest and was threatening in his manner towards the officers but was finally induced to submit to arrest, whereupon the officers departed from appellant's office with their prisoner, one on each side of him. The officers went downstairs with

Coburn and appellant followed behind them. At this point begins the real contradiction in the evidence.

According to testimony of four or five witnesses for appellees, after the officers reached the street with Coburn and had gotten some few feet from the door of the stairway leading to appellant's office, Coburn was arguing with the officers demanding to know by what authority they were taking him to jail; he grabbed hold of Turpin's coat in front and was holding on to him; Turpin at this time said, "Don't tear my clothes" and appellant, who had reached the street, came up and told Turpin to let him (appellant) have his club, whereupon he took Turpin's club and hit Coburn over the head with it; Coburn sunk down as a result of the blow and when he straightened up appellant again struck him over the head; the officers then went down the street with Coburn between them and appellant followed behind with the club in his hand.

Appellant's version of what occurred, corroborated substantially by Officer Turpin but contradicted materially by Officer Neal, is that when he reached the street he saw a scuffle between Coburn and the officers in which Coburn had gotten hold of Turpin's pistol and was trying to pull it from the scabbard, which he was unable to do on account of the safety strap holding the pistol. Then, in appellant's own words, "Turpin had his hand and trying to work his club with his hand at the same time. I saw the situation. I ran back and tried to talk to him. I told him, 'Bill, for God's sake, don't do that. You said you would go.' He didn't say anything to me then. I said, 'Give me that stick. Let me get him loose from the gun.' When I did I hit Bill across the knuckle. He grabbed Turpin. I told him that if he didn't go on, 'I will hit you with the stick.' He said, 'I am not going to jail. No son-of-a-bitch is going to put me in jail.' I walked around, I didn't go any further than I had to and hit him twice. At the time I hit him he said, 'All right, I will go.' I guess I followed them to the jail ten or fifteen feet behind. We went to the jail and knocked and the jailer opened the door and let them in."

On arriving at the jail Coburn's hat was removed and considerable blood gushed from his head. He laid down on a bench about 16 or 17 inches high and shortly thereafter was seen by the jailer to roll off the bench on to the concrete floor. He pulled himself up on the

bench and some time later rolled off again. On a later visit to the jail by the jailer it was found that Coburn was dead and a post mortem examination revealed that his death was produced by a fracture of the skull and accompanying blood clot.

Appellant attempted to prove by physicians that it was just as probable that Coburn's death was caused by the falls from the bench as that it was caused by the blows but the physicians, while stating that it was possible that the fracture was due to the falls, nevertheless stated that it was not probable and that it was most probably caused by the blows. In any event, we give no serious consideration to the argument that the case falls within the rule laid down in Hollon v. Campton Fuel and Light Co., 127 Ky. 266, 105 S. W. 426, 32 Ky. Law Rep. 178, and other cases of similar import to the effect that if the evidence shows that an injury might have resulted from one of two or more causes, only one of which was due to defendant's negligence, and the inference that the injury resulted from one cause is no stronger than that it resulted from the other, the plaintiff has failed to make out his case. Here the plaintiff's testimony was all directed to showing, and showed, only that the blows inflicted by appellant were the cause of Coburn's death. The defendant attempted to show by evidence wholly unconvincing that the death resulted from other causes. No reasonable man hearing this testimony could reach any other conclusion than that the blows inflicted by appellant were the cause of Coburn's death. The jury so found and their verdict was amply justified.

It is contended for appellant that the evidence shows as a matter of law that he was justified in striking Coburn at the time he did so and that therefore a verdict should have been directed in his behalf. In support of this contention we are cited to the case of Crawford v. Com., 241 Ky. 391, 44 S. W. (2d) 286, to the effect that where the right to make an arrest for felony exists a citizen is authorized to use such force as is necessary or as appears to him in the exercise of a reasonable judgment to be necessary to prevent an escape from custody, even to shooting and wounding the person in custody. It is urged that the evidence conclusively shows that appellant used only such force as appeared to him to be reasonably necessary to prevent Coburn's

escape and to avert danger to the officers at his hands. Appellees concede the law to be as appellant contends but insist that it was a case for the jury to decide under the applicable law. In this we concur. The jury were appropriately instructed as to the right of appellant to act in the defense of Officers Turpin and Neal and were further instructed that appellant had the right to use such force as appeared to him in the exercise of a reasonable judgment to be necessary to prevent Coburn's escape from the officers. The verdict of the jury was amply justified since the evidence for appellees, if the jury believed it, which they had a right to do, tended to show that neither of the officers was in any real danger and that they were capable of handling their prisoner. It may well be doubted that a directed verdict should have been given had there been no other testimony than that of appellant since, from his testimony alone, a finding that he used more force than appeared to him reasonably necessary to prevent Coburn's escape, might have been justified. We find no merit in the contention that a verdict should have been directed for appellant. The same considerations are applicable to the contention that the verdict was not authorized by the evidence. Our conclusion is that there was ample evidence to sustain the verdict of the jury.

It is contended that error was committed in permitting Mrs. Coburn to testify that her children were inmates of the Masonic Home but we find nothing here prejudicial to appellant's substantial rights. These children were parties plaintiff and Mrs. Coburn was entitled to account for their absence. In response to a question as to the whereabouts of the children she merely stated that they were at the Masonic Home.

• During the trial of the case, and in the presence of the jury, the trial judge recognized two witnesses for the appellees to appear before the grand jury at the next term of Montgomery Circuit Court. It is urged that this action upon the part of the trial judge was calculated to create the impression on the jury that the court felt that there was sufficient evidence to authorize an indictment. It must be admitted that it would have been better for such action to have been taken out of the presence of the jury but we do not feel that this action was such as materially to prejudice appellant's substantial rights.

The next contention is that error was committed in sustaining appellee's motion for a change of venue. It is true that by far the larger number of witnesses testifying on the motion stated that a fair trial could have been secured by appellees in Montgomery County, nevertheless at least three witnesses testified to the contrary, the three being members of grand juries which heard the evidence on this case and refused to indict. It is shown also that attempts were made to secure an indictment before seven different grand juries and no indictment was returned. The three witnesses testifying that a fair trial could not be had in Montgomery County were, by reason of their service on the grand jury, peculiarly qualified to speak on this subject. We have said many times that a ruling by the trial court on a motion for a change of venue will not be disturbed on appeal unless the sound discretion vested in the trial court clearly appears to have been abused. See Pierce v. Crisp, 267 Ky. 420, 102 S. W. (2d) 386, and cases therein cited. We reach the conclusion not only that the trial court did not abuse his discretion but that his action in granting a change of venue was amply justified.

The final contention is that the verdict is excessive and in this connection it is pointed out that the earning power of the deceased was not proven and that therefore the jury were furnished no yardstick by which to measure the damages. Of course, a better criterion would have been furnished the jury had the deceased's earning power been proven but it is not essential that this should be done. City of Madisonville v. Nisbet's Adm'r, 270 Ky. 248, 109 S. W. (2d) 593; Ashland Sanitary Milk Co. v. Messersmith's Adm'r, 236 Ky. 91, 32 S. W. (2d) 727. In the latter case a judgment for $15,000 for the death of a girl ten and a half years of age was affirmed. We are dealing here with the case of a powerful, robust man 33 years of age, engaged in a gainful occupation and with a long expectancy of life. We have said many times that a verdict of this character will not be disturbed unless it is so large and disproportionate to the probable loss as to strike the mind at first blush as being the result of passion and prejudice on the part of the jury. Measured by this rule, the verdict does not appear to us to be excessive.

Judgment affirmed.