## Heskamp et al. v. Bradshaw's Adm'r.

June 8, 1943.

619

Jones, Keith & Jones for appellants.

Dodd & Dodd and W. Scott Miller for appellee.

OPINION OF THE COURT BY JUDGE REES—Affirming.

C. W. Bradshaw was struck and killed at the inter-

section of Baxter avenue and Rosewood avenue in Louisville, Kentucky, by an automobile owned by appellant H. G. Heskamp, Jr. The accident occurred about 5:20 p. m. on November 26, 1941. Clifton S. Miller qualified as administrator of Bradshaw's estate, and brought this action against H. G. Heskamp, Jr., doing business as Heskamp Dry Cleaners, and Charles R. Davidson, the driver of the automobile, to recover damages for his death. On the trial of the case the jury returned a verdict for $5,000 in favor of the plaintiff.

It is first insisted that the court erred in overruling the defendants' motion for a peremptory instruction because (1) there is no evidence of negligence on the part of the driver of the automobile; and (2) the evidence shows conclusively that the deceased ran directly into the path of the oncoming car.

Mr. Bradshaw, a man 78 years of age at the time of his death, lived on Rosewood avenue in Louisville west of Baxter avenue. In the late afternoon on the day in question he left his home and walked east on the north side of Rosewood avenue on his way to a drugstore on Bardstown road. In order to reach Bardstown road he had to cross Baxter avenue from the northwest corner to the northeast corner of Baxter avenue and Rosewood avenue. Each avenue at the intersection is 36 feet wide from curb to curb. The sidewalk on Rosewood avenue is 7 feet wide. The crosswalk across Baxter avenue is not marked. At the southeast corner of the two avenues is a light pole and a street light is suspended from a rod extending from a pole over the street about 8½ feet from the curb. The light had been turned on at 4:48 p. m. As Mr. Bradshaw crossed from the northwest to the northeast corner of Baxter and Rosewood avenues, the automobile driven by Charles R. Davidson approached from the south on Baxter avenue. The deceased was struck by the right front fender of the automobile at a point 4 feet from the east curb of Baxter avenue. He had traveled 32 feet after leaving the curb on the west side of Baxter avenue. Several members of the police force of the city of Louisville who arrived at the scene immediately after the accident testified that the automobile was facing north on Baxter avenue, the front end about 15 feet north of the unmarked crosswalk and the right wheels 4 feet from the east curb. Mr. Bradshaw was lying in the street just in front of the front wheels.

Skid marks extended a distance of 24 feet from a point the length of the automobile south of the crosswalk showing that the front end of the car was just entering the crosswalk when the brakes were applied. The skid marks were parallel to and 4 feet from the east curb of Baxter avenue. One of the officers, Roy Watts, testified:

> "I asked Mr. Davidson, naturally, why did he hit the pedestrian while he was going across there; and he told us that he did not see this man until he looms up in front of him, and he hit the pedestrian and put on his brakes about the same time."

Davidson told the officers he was traveling at a speed of 25 or 30 miles an hour. Alvin Andres lived on Rosewood avenue between Baxter avenue and Bardstown road. He was traveling east on Rosewood avenue in an automobile and stopped when he reached a stop sign at the intersection of Rosewood and Baxter avenues. He saw the lights of appellants' automobile as it approached the intersection from his right. He realized that he could not cross Baxter avenue before appellants' car reached the intersection, and waited until it passed in front of him. Appellants' car was near the mouth of an alley about 120 or 130 feet south of the intersection when he saw it. He saw Mr. Bradshaw leave the curb at the northwest corner of the intersection, and, according to the witness, "he got partly in the street when he started to run." Charles R. Davidson, driver of the automobile and brother-in-law of the appellant H. G. Heskamp, Jr., was the only witness introduced by appellants. He testified that as he approached the intersection he saw the lights of Andres' car, which had stopped at the southwest corner of the intersection. Concerning the accident, he said:

> "I was going across the intersection, and when I got almost across I saw Mr. Bradshaw running; and all I did was to step on the brakes. That was all I could do. And he was lying there right by the side of my car when I stopped. * * * I was almost—I was to the middle of the intersection, I suppose—if I remember correctly; and he started to run. He was almost to the middle of the street running across, and I stepped on the brakes was all I could possibly do to keep from hitting him."

Appellants' contention that the court erred in over-

ruling their motion for a peremptory instruction cannot be sustained. There was evidence from which the jury might reasonably infer that the driver of the automobile failed to have the car under control and to keep a proper lookout. After stepping into the street, Mr. Bradshaw had traveled 32 feet when he was struck. The automobile had traveled many times that distance during the same period of time, and obviously if the driver had been keeping a proper lookout he would have seen Mr. Bradshaw crossing Baxter avenue before the automobile reached the middle of the intersection, which was only 18 feet from the point of the accident.

In Pryor's Adm'r v. Otter, 268 Ky. 602, 105 S. W. (2d) 564, 566, the court, after setting out the common law duties of pedestrians and automobile drivers on streets and highways, said:

"These general common-law duties require, upon the one hand, that a motorist exercise reasonable care in anticipating the presence of pedestrians at street crossings; that specifically, he keep a lookout and give reasonable and timely warning of his approach by the usual and customary signals. And, as well, he must use the same care not to injure pedestrians if he is aware of their presence, although he may assume they will themselves act with reasonable prudence and not unexpectedly or suddenly place themselves in his path. On the other hand, the pedestrian must exercise ordinary care for his own safety, which unquestionably includes the duty to observe the traffic conditions and take proper precautions to avoid placing himself in such a position that a motorist who is himself exercising due care may be unable to avoid injuring him. What that degree of care requires that he should do before attempting to cross the street is a matter to be determined by the jury without being pointed out in the instructions. The pedestrian too has the right to proceed upon the assumption that a motorist will act with reasonable care in relation to his position. But, if he sees he is not doing so, the pedestrian cannot rest upon assumption and must take such reasonable measures as he can in the circumstances to prevent his own injury."

It is clear from the evidence in the present case that the automobile was a considerable distance from the

place of the accident when Mr. Bradshaw started across Baxter avenue. The logical inference from Andres' testimony is that the automobile was 150 or 160 feet from the crosswalk extending from the northwest corner to the northeast corner of the intersection when the deceased stepped from the curb into Baxter avenue. It may be that he became confused and ran in front of the automobile when he reached the middle of the street and saw it approaching from the right, but whether negligence of the driver of the car or contributory negligence of the deceased was the proximate cause of the accident was for the jury.

It is next insisted that the court erred in its instruction on the right of way, in giving the last clear chance instruction, and in submitting to the jury the question of the necessity for reasonable and timely warning by the driver of the automobile. Appellants complain because the court assumed in instruction No. 1 that the plaintiff's decedent was in the crosswalk when he was struck, and because the court failed to instruct on the respective duties of the pedestrian and the driver of the automobile if the pedestrian crossed the street at a place other than on the crosswalk. They assume that Mr. Bradshaw was crossing Baxter avenue north of the crosswalk because he was found lying in the street 15 feet north of the crosswalk after the accident. The testimony of Davidson, the driver of the car, shows almost conclusively that Mr. Bradshaw was struck when he was on the crosswalk, but, be that as it may, instruction No. 1 did not tell the jury that he was on the crosswalk but left the question for their determination. After setting forth the duties of the driver of the car, including the duty "to exercise ordinary care to avoid striking pedestrians using the street at the intersection of Rosewood and Baxter avenues," the instruction continued:

"If the decedent had entered upon the crossing and was walking toward the path of defendant's automobile at such rate of speed that the defendant Davidson could not reasonably and prudently proceed without colliding with decedent, then it was the duty of said defendant to yield the right of way by altering his course, reducing his speed, or stopping his automobile to permit decedent to pass ahead of him in safety."

Conceding without deciding that an instruction on

the duties of the parties, if the deceased was crossing Baxter avenue at a point north of the crosswalk, was authorized by the evidence, appellants cannot complain since they failed to request such an instruction, or any instruction, except a peremptory instruction to find in their favor. Jones v. Sanders, 284 Ky. 571, 145 S. W. (2d) 514; Murphy v. Phelps, 241 Ky. 339, 43 S. W. (2d) 1010; Mann's Ex'r v. Leyman Motor Company, 234 Ky. 639, 28 S. W. (2d) 956. There was sufficient evidence to warrant a last clear chance instruction. There was proof that Mr. Bradshaw left the sidewalk on the west side of Baxter avenue when the automobile was 150 or 160 feet away and its driver had ample time to discover his presence in the street and to avert the accident. Though a pedestrian may be negligent in crossing the street, still he may recover if after his peril is discovered, or by ordinary care should be discovered, the driver of the automobile could, by ordinary care, avoid injuring him, and the contributory negligence instruction should be so qualified. Nowalk v. Joseph, 275 Ky. 470, 121 S. W. (2d) 939; Hopper v. Barren Fork Coal Company, 263 Ky. 446, 92 S. W. (2d) 776; Ross v. Louisville Taxicab & Transfer Company, 202 Ky. 828, 261 S. W. 590.

The contention that the court erred in submitting to the jury the question of the necessity for reasonable and timely warning by the driver of the automobile was disposed of in Pryor's Adm'r v. Otter, 268 Ky. 602, 105 S. W. (2d) 564, 566, where the conditions were quite similar to those in the present case. In that case it was said:

"While the defendant testified he did not see Miss Pryor until he struck her, yet the circumstances were such that he could have done so. Whether he should have seen her in the exercise of ordinary care and have given a warning was for the jury. The duty of sounding a horn was not obviated by the fact he did not see her."

Appellants' final contention is that the court erred in permitting the plaintiff to prove that for some years prior to his death Mr. Bradshaw had been the recipient of a pension. It is argued that the verdict was not authorized by the evidence since no testimony was offered showing that plaintiff's decedent either earned any money for the past several years or was able to earn any money, nor was any competent testimony offered to show

that his estate sustained any loss by the destruction of his power to earn money. Mr. Bradshaw was 78 years old with a life expectancy of 6.21 years when he received the fatal injuries, was in good health, and was unusually active for a man of his age. He was an employee of the Louisville & Nashville Railroad Company for more than 40 years, and was a division superintendent when he was retired on a pension in 1922. He was paid $148.90 a month by the Louisville & Nashville Railroad Company until May 1, 1932, when the payments were reduced 10%, and he was then paid $134.01 a month until July 1, 1937, when the Federal Railroad Retirement Act became effective. 45 U. S. C. A., sec. 228a et seq. Section 6 of the act provided that each individual then on the pension roll of an employer should be paid on July 1, 1937, and on the first day of each calendar month thereafter during his life a pension at the same rate as the pension granted to him by his employer, provided, however, that no pension payable under the act should exceed $120 monthly. Beginning July 1, 1937, Mr. Bradshaw was paid $120 each month under the Railroad Retirement Act and $26.01 by the Louisville & Nashville Railroad Company until his death. Failure to furnish the jury with proof of the decedent's earning power will not prevent them from exercising their own judgment in the matter and determining the amount of damages the estate has suffered. Reynolds v. Coburn, 285 Ky. 544, 148 S. W. (2d) 705; Commonwealth v. Hoover's Adm'r, 274 Ky. 472, 118 S. W. (2d) 741; City of Madisonville v. Nisbet's Adm'r, 270 Ky. 248, 109 S. W. (2d) 593; Keys v. Nash's Adm'x, 264 Ky. 398, 94 S. W. (2d) 1006; Chesapeake & O. R. Company v. Banks' Adm'r, 153 Ky. 629, 156 S. W. 109. But, say appellants, the proof as to the pension received by the decedent was incompetent and afforded the jury a false basis on which to rest their verdict. The precise question has never been decided by this court, and there is a dearth of authority on the subject. The decedent had earned the pension by his services in the past, and, under such circumstances, it is more reasonable to believe that a pension will continue until the pensioner's death than to believe that any salary or wages being earned by a man of advanced years will continue until his death. That a workman is earning wages at the time of his death is a circumstance to be considered by the jury in fixing the amount of damages, but it is only one element and must be considered in connection

626

with other pertinent facts. West Kentucky Coal Company v. Shoulder's Adm'r, 234 Ky. 427, 28 S. W. (2d) 479. We think a pension, especially a type such as the one received by the decedent in this case which very probably will continue until the recipient's death, is a proper element to be considered by the jury in arriving at a verdict in an action brought for damages for the death of a person by tortious act pursuant to Kentucky Statutes, sec. 6, KRS 411.130. Such a pension is a substitute for earning power. It follows that the court did not err in admitting evidence concerning the decedent's pension.

The judgment is affirmed.