## Great Northern Life Ins. Co. v. Cazner's Committee.

April 16, 1940.

Joe L. Price, Judge.

Eaton & Eaton for appellant.
Boyd & Boyd for appellee.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—Reversing.

The appeal is from a judgment in favor of Ruby Cazner's Committee for $75 a month so long as Cazner is continuously and totally disabled and necessarily confined to the house, but not exceeding a period of 100 months from June 26, 1939. The only question involved in the case was whether Cazner, the insured, was afflicted with syphilis on March 30, 1938, when he stated in his application for the insurance policy sued on that he did not have the disease. Fifteen months thereafter he became violently insane through the effects of syphilis. The appellant resisted the payment of the benefits of the policy on the ground of fraud and misrepresentation in the application. It is admitted that if the applicant in fact was afflicted with the disease when he made the representation that he was not, there can be no re-

covery. Business Men's Assurance Company v. Conley, 280 Ky. 375, 133 S. W. (2d) 554. On this appeal the only question is the sufficiency of the evidence to authorize a submission of the case to the jury.

The defendant, assuming the burden, introduced several experts in the pathology of syphilis. The doctors say Cazner has syphilitic menigo vascular encephalitis and dementia paralytica, or paresis. Fleeing to the medical dictionary for relief, we find this means inflammation of the brain tissue and blood vessels caused by syphilis and resulting in paralysis of the brain which produced insanity. The use of technical terms throughout the record, with little or no definition and but few simple statements, probably hid the facts from the jury.

Dr. A. M. Lyon, superintendent of the Western State Hospital for the Insane, where Cazner is confined, testified that when admitted he was suffering from the last stage of syphilis, that is, paresis, which condition has four progressive subdivisions, namely, depressive, expansive, agitated and dementing. He was in the "agitated" stage with involvement of the brain tissues. After five months of strenuous treatment the patient showed some improvement and his condition was then in the "expansive" or second stage of paresis. Dr. Webb, of the hospital staff, testified to the patient's condition and explained that the degree of response to treatment ordinarily indicates the length of time the disease had existed. From their study of the patient, and of the disease and authorities generally, both doctors expressed the opinion that Cazner had had syphilis for several years—certainly before the date he applied for the insurance—and that the paresis stage had existed probably for two or three years. These opinions were qualified by statements that it was barely possible for a person to contract the disease and have it progress to the stage appearing in Cazner's case within 15 months, the time between the application for insurance and the insured's commitment to the asylum, although the witnesses' elucidation makes it appear that they had reference to some rare and exceptional cases discussed in medical literature. The latest and best statistics reveal that the average time between the initial lesion and insanity was 12½ years—the shortest case being 3 and the longest 32 years. Dr. Laftry, the insurance com-

pany's medical director, upon hypothetical questions, expressed the opinion that when Cazner was declared insane in June, 1939, he had had syphilis 15 years or more. Dr. Moore, who conducts a clinic in Chicago and is apparently a well-known authority on the disease, expressed the opinion that Cazner had been afflicted anywhere from 10 to 30 years. A friend of the insured testified that while he had never heard Cazner complain of illness or of having any ailment, except an infected finger, he had gradually lost weight from early in 1937. This was all the evidence the defendant introduced to prove misrepresentation in the application for the insurance. Their proof that had the truth been shown in the application the policy would not have been issued was not contradicted.

On the other side, several friends and kinsmen of the insured, who had lived with him from time to time and had known him intimately for 12 or 15 years, testified Cazner had never been sick or taken any treatment or medicine. The only medical evidence presented by the plaintiff was the testimony of Dr. Russell Teague, who for many years has been health officer of McCracken County. His duties as such have called for the observation and treatment of many cases of syphilis. He did not know Cazner. The witness described the nature and development of the disease, and stated that it was possible for it to develop from its contraction to paresis in a short time, having seen a case progress in one year. The medical literature reports cases as having developed within one or two months. The witness' observation had been that in at least 50% of the cases the person did not know he had the disease until some symptom appeared or a test had been made. Answering a hypothetical question as to the particular case, the witness expressed the opinion that there had been a rapid progress and development. It is observed that on direct examination he expressed no opinion as to how long Cazner may have had the disease. On cross-examination, being shown the hospital record of the insured, the witness stated it would be hard to say how long Cazner had the disease without knowing more of the previous affliction.

"He might have had the disease for as short a period of time as two months or as long as twenty years. In most instances a person who develops

> paresis has had the disease from eight to twenty years. Sometimes it develops within a shorter period of time, within one year, as I mentioned.''

The opinions of the hospital doctors being submitted to him for his consideration, the witness qualified his testimony by saying: ''I did not go so far as to say that paresis could occur in two or three months after the onset of the disease,'' and stated that the usual time is 8 to 15 years, though he had seen one case develop ''about one year after the onset.'' He further qualified or explained his testimony by saying that the inflammation of the vessels of the brain can occur in as short a period as two months after the initial lesion, but that would not be paresis, which could occur in one year. In short, the witness finally concurred in the opinions and conclusions expressed by the plaintiff's witnesses. His final testimony was:

> ''According to my opinion he probaby contracted the disease more than three years before he took sick; still I say it is possible to contract the disease from eight to fifteen or twenty years before.''

The effect of this testimony elicited on cross-examination was to nullify the value of the opinion of the witness, or, more precisely speaking, the inferences applicable to Cazner's case tending to establish the non-existence of the disease when he made application for insurance. Duvall v. Commonwealth, 198 Ky. 609, 249 S. W. 768; 70 C. J. 619.

The inevitable conclusion is that there was no substantial evidence contradicting the defendant's proof that the insured had misrepresented a material fact in his application, which relieved the insurer from liability. The court, therefore, should have directed a verdict for the defendant. Business Men's Assurance Company v. Conley, supra.

Judgment reversed.