## Louisville & Nashville Railroad Company v. Thompson's Administrator.

(Decided December 3, 1926.)

## Appeal from Laurel Circuit Court.

1. Railroads—Contributory Negligence of Teamster Struck by Train while Crossing After Another Train had Passed Held for Jury.—Where railroad had automatic signals which operated before and after train crossed crossing and deceased was struck by train while crossing tracks immediately after another train had passed, contributory negligence of deceased in crossing while signals were operating held for jury.

2. Railroads—Evidence as to Distance Deceased's Body was Carried Held Admissible to Show Speed of Train.—Evidence that train striking decedent carried him some distance down track, and that shortly thereafter his body was lying near station all doubled up, but that he was unable to talk, held properly admitted to show speed of train, where it was not calculated to rouse sympathies of jurors.

3. Evidence—Life Tables Held Admissible to Show Probable Duration of Life of Deceased.—In suit for death, life tables held properly admitted to show probable duration of life of deceased.

4. Death—Refusal to Instruct that Life Tables were to be Considered with Other Evidence as to Probable Duration of Life of Deceased Held Error.—In suit for death, refusal of instruction that life tables were admitted only to show probable duration of life of healthy person, and were to be considered by jury in connection with other evidence as to probable duration of decedent's life, held error.

5.  Railroads—Instruction requiring Trainmen to Sound Whistle Not
    Less than .50 Rods from City Crossing, Following Statute, Appli-
    cable to Country Crossings, Held Error.—Instruction that it was
    trainmen's duty to sound whistle at point not less than 50 rods
    from crossing, in city, where decedent was struck, and to give
    warning continuously from that point on, following Ky. Stats.,
    section 786, held error; such statute being applicable to country
    crossings, and evidence being conflicting as to point at which
    signal was given.

6.  Trial—Instruction as to Care Required of Railroad at Crossing
    Held Erroneous as Outside Issues.—Instruction that it was duty
    of railroad employees to use such other means to prevent injury
    to travelers at crossings as reasonably prudent persons would use
    under similar conditions in exercise of ordinary care, where in-
    structions had already imposed upon train operatives all duties
    they had been charged in pleadings of violating, held misleading.

7.  Railroads—Instruction on Contributory Negligence Referring to
    Age of 17-Year-Old Traveler Injured by Train Held Erroneous.—
    In suit for death of decedent, 17 years old, killed by train at cross-
    ing, instruction that, if decedent was guilty of contributory negli-
    gence in failing to exercise such care as reasonably prudent person
    of his age would have exercised, they should find for the defend-
    ant, held reversible error.

WOODWARD, WARFIELD & HOBSON, ASHBY M. WARREN,
GEORGE G. BROCK and TYE & SILER for appellant.

LEWIS, BEGLEY & LEWIS for appellee.

OPINION OF THE COURT BY TURNER, COMMISSIONER—
Reversing.

In January, 1925, Raymond Thompson, a little less
than 17 years of age, while driving a team attached to a
covered wagon, was struck and killed by appellant's
southbound freight train at a grade crossing on Man-
chester street in London, Kentucky. The crossing is at
a point approximately half-way between its passenger
and its freight depot, although somewhat nearer to
the latter, and is a double crossing, necessitating
going over two railroad tracks, the eastern track
being known as the northbound track, and the western as
the southbound track. The boy was going from west
to east, and just before he reached the western or south-
bound track a northbound freight train on the eastern
track started over the crossing on that track. He halted
his team a few feet west of the western track and re-
mained there for a short time until the northbound train
had passed over the crossing, and then immediately drove

his team on to the western or southbound track, but before he could cross it a southbound freight train on that track struck his wagon which resulted in his death.

In this action by his personal representative for damages because of his death as alleged by reason of the negligence of defendant and its agents and servants, the negligence relied on is (1) that the train causing his death gave no signal of its approach to the crossing; (2) that the train at the time was running at an excessive rate of speed; (3) that no lookout was maintained by those in charge of the train; (4) that defendant at the time had left standing on its railroad tracks, immediately north of the crossing, some empty cars which were so located and situated as to obstruct the view of decedent of trains approaching from the north; (5) asserting the existence of a city ordinance of the city of London limiting the speed of trains through that city to 12 miles an hour, and alleging the train in question was at the time running at a rate of speed greatly in excess of that; and (6) that the employees on defendant's train at the time saw the decedent and his team and wagon and discovered their peril in time to have avoided the collision and consequent injury and death, or that by the exercise of ordinary care they could have done so.

The answer put in issue the material allegations of the petition, and in a second paragraph relied upon contributory negligence. The latter defense was put in issue by the reply, and upon a trial there was a verdict for plaintiff of $10,000.00, and this appeal is from a judgment entered on that verdict.

As there must be a reversal because of error in instructions it is deemed necessary to consider only three questions, (1) whether defendant was entitled to a directed verdict; (2) alleged errors in the admission of evidence, and (3) error in instructions.

The essential facts disclosed in the evidence are that Raymond Thompson, the decedent, then less than 17 years old, had for a short period of about seventeen or eighteen days been engaged in carrying the mail from London to a point in the county a few miles away, and that in so doing he traversed Manchester street in the city of London, and had to cross the double track crossing in question; that he reached the crossing on that morning about 7:15 or 7:30 o'clock, and about the time he reached there a freight train was going north on the

far or eastern track which he must cross; that directly in front of the point where he stopped and fifty or sixty feet away, on the east of the eastern track was a wigwag or electric signal then in operation; that located at the north of the crossing, on what is called the house-track, which decedent did not have to cross, and between the place where he stopped and the freight depot, were two cars so situated that they obstructed, in a measure, the view from that point to the north; that immediately after the last car on the northbound train passed over the crossing decedent started his horses and drove on to the western or southbound track, but before his wagon cleared that track it was struck by the southbound train.

The evidence is conflicting as to the rate of speed the train was going, and as to whether any signals of its approach were given. Some of the witnesses for the plaintiff estimated the speed of the train at from forty to forty-five miles per hour, and the evidence showed that it was a train of empty cars and was at the time going down grade. Likewise several witnesses for the plaintiff testified that no signals were given upon the approach of the train to the crossing, or that they heard none.

Because there must be another trial of this case we will refrain from a more detailed recital of the evidence, as that stated is sufficient to illustrate the questions necessary to pass upon.

There appears to have been at this double crossing only one electric wigwag or signal, and as we gather that signal began to operate automatically when the trains going in either direction and on either track reached a point 1,000 feet away, and continued to operate for a short time after the last car of a train passed over the crossing. Whether decedent knew this latter fact or not, he might very reasonably have thought that it was still operating because of the recent passing of the north-bound train, and it did not, therefore, necessarily operate as notice to him there was another train approaching on the southbound track. The contention, therefore, of appellant that decedent was guilty of contributory negligence as a matter of law because he drove upon the south-bound track at a time when the wigwag was still in operation under these circumstances cannot be sustained. All the evidence shows that he did not drive upon the track until the last car of the northbound train had passed the crossing, and although the electric signal was still in

operation, under the facts it cannot be treated as notice to him that a train was approaching on the southbound track. There is evidence that before decedent drove upon the track he looked north in the direction from whence the southbound train came, and evidently being then assured no train was coming from that direction proceeded to cross.

The evidence discloses that the freight depot was 194 feet north of the station, and that there were at the time standing upon the house-track at a point some nearer to the crossing than the freight depot, two freight cars which to some extent obstructed the view to the north from the crossing. It also shows that the team appellant was driving was halted some few feet from the southbound track, and necessarily he in the covered wagon was some feet further away from the track than the team, and from that point, therefore, could not see as far north as he might have done if he had been up to or nearer to the track, and the evidence tends to show he could not from that point have seen as far north as he might have done if the freight cars on the house-track had not obstructed his view.

Inasmuch, therefore, as the electric signal, although at the time working, did not relieve defendant from its duty to give signals of the approach of its train (L. & N. v. Jameson's Admr., 214 Ky. 552), and as the evidence tends to show decedent before driving upon the track used the means at his command to ascertain whether a train was approaching from the north, it cannot be said that he was guilty of such contributory negligence, as a matter of law, which should take that question out of the hands of the jury. The question was, therefore, properly submitted to the jury.

There is much discussion in the briefs as to the action of the court on the trial in first admitting evidence as to the ordinance regulating the speed of trains through the city of London, but which evidence the court thereafter excluded. But we find it unnecessary to go into that question because of a reversal for other reasons, and because upon another trial the same things will not likely happen.

The court permitted evidence over defendant's objection to the effect that the train carried decedent some distance down the track, and that shortly thereafter his body was lying near the passenger station "all doubled

up," and that while he was still alive he was unable to talk, and probably never spoke again. It is insisted that this evidence was incompetent under the rule stated in L. & N. v. Holloway's Admr., 163 Ky. 125, and L. & N. v. Scott's Admr., 184 Ky. 319; but it will be observed that the evidence here only shows that defendant was badly injured and that he could not talk immediately after the injury. It does not go into the horrible details connected with the killing, and was not calculated, as in the cited cases, to arouse the sympathies of the jurors, but was merely an incidental statement of the facts immediately after the collision.

The evidence as to the distance which the body was carried by the train after the collision was properly admitted as bearing upon the issue as to the speed of the train.

But it is complained that a number of appellee's witnesses were permitted to express their opinion as to the speed of the train without first qualifying themselves. We find, however, that many of the witnesses did qualify themselves to give such evidence in the manner required in the opinion in L. & N. v. Stewart's Adm., 131 Ky. 665, while possibly others did not. Upon the next trial the court will be guided by that opinion in the admission of such evidence.

The life tables were properly permitted to be introduced in evidence by the plaintiff, but the court erred in refusing to instruct the jury, as requested by defendant, that the table was admitted only for the purpose of showing the probable duration of life of a healthy person, and was to be considered by the jury in connection with other evidence in the case as to his probable duration of life. I. C. R. R. Co. v. Houchins, 121 Ky. 526; L. & N. v. Irby, 141 Ky. 145; Chicago Veneer Co. v. Jones, 143 Ky. 21.

On the trial the plaintiff was permitted to prove that since the accident the derailer on the house-track had been moved further north so that cars on that track would stand further away from the crossing than they then did. And it is earnestly argued that this was incompetent under the rule that subsequent changes or repairs after an accident may not be admitted in evidence. If the location of the derailer on that track had any connection with the location of the empty cars thereon, the point would seem to be well taken; but if upon another trial

the court should order the jury to view the place of the accident, then the plaintiff should be permitted to show that the location of any cars on that track at the time of such inspection by the jury was different from. their location at the time of the accident.

The first instruction tells the jury it was the duty of the trainmen to sound the whistle and ring the bell at a point not less than fifty rods north of the crossing, and to sound the whistle and ring the bell. continuously or alternately from that point to the crossing, and was obviously drawn under the provisions of 786, Ky Stats., which by its very terms has application only to crossings outside of incorporated cities and towns. It does not appear that the city of London had any local regulation with reference to signals by trains running through the city, and as the statute with reference to signals at country crossings had no application the courts should have instructed that it was the duty of the defendant to give a reasonable warning of the approach of its train to the crossing by ringing the bell or blowing the whistle, as required at common law. L. & N. v. Johnson, 214 Ky. 189. This error in that instruction becomes important in the light of the fact that there was some contrariety in the evidence as to the point at which the signal claimed to have been given, was given.

Likewise the first instruction, after setting forth the duty of the train operatives as to the keeping of a lookout and running the train at a reasonable rate, said:

"And it was also the duty of the employees of the defendant company in charge of said train to use such other means to prevent injury to travelers at said crossing as reasonably prudent persons would, in the exercise of ordinary care, use in the operation of said trains at the time and place and under the conditions similar to those shown in this case."

Obviously this addition to that instruction was not only erroneous, but might easily have been misleading; the instruction had already imposed upon the train operatives all the duties they had been charged in the pleadings of violating or omitting, and this addition to the instruction imposed upon them in an indefinite and uncertain way some additional duty which they had not been charged with violating. Or it might have been inter-

preted by the jury to have meant that it was the duty of some of the railroad officials to keep a watchman at the crossing in addition to the electric signal, or perform some other thing the observance of which was not in issue.

In the third instruction, dealing with contributory negligence, the jury was instructed that if they believed from the evidence that decedent was guilty of such contributory negligence on his own part in failing to exercise such care for his own safety

> "as a reasonably prudent person of his age and experience would have ordinarily exercised under similar circumstances,"

they would find for the defendant.

Obviously the reference in the instruction to the age and experience of decedent might have carried into the minds of the jury the impression that one of his age or lack of experience was not required to exercise such care as an older or more experienced person. The evidence is undenied that deceased was at the time almost seventeen years of age; he had reached the age where he could go to work on his own account, he had reached the age when he might lawfully marry, and had reached the age when human experience teaches that men are accountable to the fullest extent for their actions, and we have no difficulty in holding that any reference in such an instruction to the age or experience of decedent in defining what may be deemed contributory negligence in him, is fatally erroneous and calculated to mislead the jury.

All questions raised and not specifically passed upon are reserved.

The judgment is reversed, with directions to grant appellant a new trial, and for further proceedings consistent herewith.