## LOUISVILLE & N. R. CO. v. YOUNG'S ADM'X.

Court of Appeals of Kentucky.

Dec. 19, 1952.

C. S. Landrum, Lexington, Charles S. Adams, Covington, C. E. Rice, Jr., Lexington, for appellant.

Sawyer A. Smith, Covington, for appellee.

SIMS, Justice.

Appellee, Lillie Mae Young, as administratrix of her deceased husband, Alex J. Young, sued the Louisville & Nashville Railroad Company under the Federal Employers' Liability Act, 45 U.S.C.A. § 51 et seq., for $150,000 damages for the death of her husband alleged to have been caused by the negligence of appellant on March 3, 1950. The trial resulted in a verdict in favor of her and her four infant children in the sum of $60,000, which the jury allotted to Lillie Mae (widow) $19,500, Pricilla $7,500, Alex Jr., $9,000, Audrey $11,000 and Glen $13,000. To reverse the judgment entered thereon the Company assigns three errors: 1. The verdict is not supported by the evidence; 2. the court erred in giving and refusing instructions; 3. the damages awarded are excessive.

Young was employed by the Company as a laborer in its yards at Decoursey in Kenton County. About 11:00 o'clock on the morning of March 3, 1950, while he was attempting to unhook a car spring weighing from 450 to 500 pounds which was being lowered into a skid box by an electric crane operated by E. L. England, the boom cable snapped which caused the boom of the crane to fall on Young, who died two days later as a result of his injuries.

The petition set out the age of deceased as 31, that of his widow as 26 and of his four infant children as 9, 6 and 3 years, and a baby of nine months. The answer admitted the ages of the widow and of the children, but denied Young's age and that his death was caused by the Company's negligence, and contained affirmative pleas of contributory negligence and assumption of risk upon the part of Young. A reply denied these affirmative pleas. It may be well to here state that § 54 of the Federal Employers' Liability Act provides that no employee shall be held to have assumed the risk of his employment in any case where his injury or death resulted in whole or in part from the negligence on the carrier, or where the violation by the carrier of any statute enacted for the safety of the employee contributed to his injury or his death.

The alleged negligence of the Company upon which appellee relied is that the boom cable was defective or insufficient for the purpose for which it was being used. The proof shows this crane had an 18 foot boom which was supported and controlled by a 3/8 inch wire cable of three strands twisted together into one

piece and each strand was composed of 40 or 50 small wires. The crane carried another similar cable which handled the load. It was the boom cable which snapped and that is the one with which we are concerned. The crane had a capacity of 3 tons but there was proof that at times loads up to 8 tons were handled by it. The crane was overhauled in Louisville in December 1949, but no new cable was put on it then, and the crane was returned to the Decoursey yards early in January 1950. England testified for appellee and stated a new cable had been put on the boom in 1949, in less than 8 months before the accident.

England, the operator of the crane at the time of the accident, was the sole witness for appellee that the cable was defective. He testified that on the morning of the accident he inspected the cable for his own safety, as he did every morning, and it was "very thin, very small", and he told J. W. Stephens, roundhouse foreman, about 8 o'clock the morning of the accident that the cable "should be inspected, we need a new cable on it. * * * Stephens told me he had had the engineer take care of it and he would take care of it". England further testified that the cable, which was exhibited on the trial, "is drawn down thin, I would say from a thirty-second to the size of three-eights"; that heavy loads would stretch the cable and weaken it, and that the cable "snapped due to the use and abuse of the cable".

On cross-examination England was asked if he had not made a report on the accident in which nothing was said about him noticing any defect in the cable. He replied, "there was something said about it, but it was not put into that statement that I made to the Master Mechanic Carl Wolfing". The following appears in the cross-examination of the witness in reference to the signed statement he made four days after the accident to H. G. Breetz, a claim agent of the Company:

"Q. Now—talking about the cable —'After the accident I saw that the boom had been allowed to fall by the pulling apart of the cable. There was nothing to indicate that there were any old breaks in the cable but where it pulled apart it looked like all the wires were freshly pulled apart.'? A. Yes.

"Q. 'The block carried the weight of the material that you are handling, but the boom carries the weight of the whole load and I am totally unable to account for this cable pulling apart especially in doing so immediately after the weight of the spring was taken from it.' You made that statement? A. Yes.

"Q. 'The boom cable winds on a drum and runs through pulley blocks and there was nothing wrong with them to have caused any undue wear of the cable.' You made that statement? A. Yes."

On redirect examination England stated he answered questions by Breetz but the latter wrote the statement in his own words.

All the testimony is to the effect that this cable showed no old break, which would have been evidenced by the ends of the wires in the cable curling. And it was conclusively proven that J. W. Stephens, the roundhouse foreman to whom England testified he complained of the cable on the morning of the accident, was out of the State from February 19 until March 4 and England could not possibly have asked him to have the cable inspected.

■ Appellant argues that England's testimony on cross-examination so contradicted that given on his direct examination as to amount to a withdrawal of it, citing Bass v. Com., 232 Ky. 445, 23 S.W.2d 926, and Great Northern Life Ins. Co. v. Cazner's Committee, 282 Ky. 515, 139 S.W.2d 424. While there are statements made by England on cross-examination which conflict with what he said on direct examination, the statements are not so contradictory as to destroy his value as a witness. England's contradictory statements are nothing like so glaring as those made by the witnesses in the Bass and Cazner cases. In the circumstances it was for the jury to determine the credibility of the witness and the probative value to be given

his testimony. Short Way Lines v. Sutton's Adm'r, 291 Ky. 541, 164 S.W.2d 809; City of Paducah v. Brunnhoper, 281 Ky. 177, 135 S.W.2d 413.

It is next insisted by appellant that as the crane just preceding handling this spring had handled a much heavier load without difficulty, and as the Company had no notice that the cable was not in reasonably safe repair, it is not liable for any defect therein which had never been brought to its notice, or which it could not have discovered by the exercise of ordinary care, citing Louisville & N. R. Co. v. Wright, 199 Ky. 422, 251 S.W. 188. That was a case where Wright was injured as the result of a hole in a crossing maintained by the railroad, and we held as the company had no notice of the hole and as there was no proof that it existed long enough for notice to be imputed to the railroad company, it was not liable. That case is not controlling here. Anybody or anything could have made that hole without the railroad's knowledge. Here, the Company furnished a tool to Young in the form of this crane with which to work. While it was not an insurer, it was the company's duty to furnish a tool which it had exercised ordinary care to see was reasonably safe. Missouri Pac. R. Co. v. Aeby, 275 U.S. 426, 48 S.Ct. 177, 72 L.Ed. 351; Atlantic Coastline R. Co. v. Dixon, 5 Cir., 189 F.2d 525.

Under the evidence, and the peculiar and unusual facts of this case, it was for the jury to say whether the Company had exercised ordinary care as to whether this crane was reasonably safe for Young to use. The court properly submitted this question to the jury in the first instruction which is practically the same as instruction "B" offered by appellant.

The complaint of the first instruction is that it not only imposed upon the Company the duty of exercising ordinary care to equip the crane with a cable that was not defective or insufficient, but imposed an absolute duty upon it to do so. Evidently, appellant has misread or misconstrued this instruction, because the duty it placed upon the Company was "* * * to exercise ordinary care to have and to keep said crane equipped with cables that were not defective or insufficient for the purposes for which such cables were used * * *."

The criticism directed at the second instruction on contributory negligence (which under 45 U.S.C.A. § 53 would reduce the recovery in proportion to Young's contributory negligence) is that it only submitted to the jury that it was Young's duty to use ordinary care in going under the crane and in determining whether or not the cable was safe, and omitted all reference to whether or not he used ordinary care in turning his back to the operator of the crane, and in attempting to unhook the spring before it had been completely lowered in the skid box. When the court told the jury that it was Young's duty to use ordinary care for his safety in going under the boom, that was sufficient as it submitted to the jury whether or not he was negligent in turning his back to the operator of the crane and in attempting to unhook the load before it had come to rest when he went under the crane.

We now come to the question as to whether or not the damages of $60,000 are excessive. The uncontradicted proof shows Young's average yearly earnings during the last 5 years of his life, which he took home, were $2712.14. Out of that sum his widow testified he gave her an average of $200 per month, or $2400 per year. She testified that from this sum she paid the rent and the food for the family, in which her husband benefitted—he even took his lunch from home. However, Young bought his own clothing. The evidence is not as definite as it might have been as to just what proportion Young shared in the $200 a month he contributed to his family. We realize the difficulty of definitely ascertaining and stating such a fact. The best we can determine from the evidence is that $400 of the $2400 a year he gave his family would be the minimum sum which would cover his lodging and food. This leaves a contribution by him to his family of $2000 per year.

The measure of damages in this character of case is, the dependents of the deceased are entitled to recover for the loss

of pecuniary benefits which they had a reasonable expectation of receiving from him had he not been killed. The relationship between deceased and his dependents is a proper consideration in computing the damages. Louisville & N. R. Co. v. Jolly's Adm'x, 232 Ky. 702, 23 S.W.2d 564, at page 571, and the cases therein cited: Louisville & N. R. Co. v. Stephens, 298 Ky. 328, 182 S.W.2d 447, at page 456. In the instant case there was no evidence of any care or advice Young gave his dependents, so the measure of damages is limited to a sum which would produce $2000 a year to his widow and his infant children during their dependency, that is, as long as the mother of the children remained a widow and until each of the children reached the age of 21 years, calculated at the highest net rate of interest a safe investment will yield. As said in the Stephens case, 182 S. W.2d at page 456: "While a calculation based upon the above factors is not conclusive proof of actual pecuniary loss, it furnishes as fair a basis as can be suggested for considering the question of whether the verdict is excessive".

The proof shows Young was 32 years of age at the time of his death and the ages of the widow and children are shown in the third paragraph of this opinion.

The statements of the various bankers testifying gave the highest net rate of interest which a safe investment would bear as ranging from 1½% to 5½%. Mr. Monroe Zeidler, the only banker testifying for appellee, while putting the highest net rate a safe loan would produce at 1½%, admitted that good real estate mortgage loans bore up to 5%. Mr. Edward A. Vosmer, a banker testifying for appellant, stated a safe loan would net from 3½% to 4%. Mr. Thomas A. Hanauer, another banker testifying for appellant, gave such rate as from 3½% to 3.75%. From this record, we think with reason it might be said that the highest net rate a safe investment in March 1950 would produce was 4%.

Young was 32 years of age and under the "Life Expectancy Table" appearing in KRS page 2908, he had an expectancy of 35.88 years. His dependents were receiving from his earnings $2000 per year

and the present value with interest at 4% according to the "Present Value Table" shown in Carroll's 1936 Ky.Statutes, page 2687, is $2000 multiplied by 19.9083 (adding 1.000 for the first payment to start immediately), or $39,816.60. To illustrate that the verdict is grossly excessive, the $60,000 judgment at 4% would produce an income to the dependents of $2400 per year, which is $400 a year more than deceased gave his family, or $14,200 in the space of 35.88 years, and at the end of that time his dependents would still have the $60,000.

It is the general rule in federal courts that a verdict will not be set aside on account of excessive damages unless it is so excessive as to demonstrate that the jury has acted against the rules of law or has suffered their passion or prejudice to mislead them. Barry v. Edmunds, 116 U.S. 550, 565; 6 S.Ct. 501, 509, 29 L.Ed. 729; Louisville & N. R. Co. v. Jolly's Adm'x, 232 Ky. 702, 23 S.W.2d 564, 571. This is such a case.

Appellee insists that the verdict should be sustained because of the low purchasing value of the dollar at the time Young was killed. The answer to that argument is the low purchasing power of money was responsible for Young's high wages. In ordinary times a day laborer would not earn $2700 a year "take home pay", nor would he be able to give his wife and four infant children $2000 a year for their support. Young's high wages are responsible for what we say would be reasonable compensation to his dependents in the sum of $39,816.60 for being deprived of his financial support.

Complaint is made that the third instruction, which is on the measure of damages, should have told the jury in arriving at a sum which would produce an income equal to Young's contribution to his dependents that no amount of that sum should be left or not used up at the expiration of the period of dependency of the widow and of the children. As the measure of recovery is to supply the dependents with the amount their decedent would have supplied them during their period of dependency, on another trial the

court will include this idea in appropriate language in his instruction on the measure of damages.

It is further argued by appellant that as he offered an instruction on the measure of damages which told the jury in arriving at the pecuniary benefit Young's widow and children would receive, that they should take into consideration the fact that all persons do not live to the age of expectancy shown by the life tables, and that such is particularly true in cases of hazardous employment as in railroad work, as well as the fact that people do not work all the years of their life, and the expected contribution may vary or diminish in the future, the court should have so instructed. Appellant cites *Louisville & N. R. Co. v. Thompson's Adm'r,* 217 Ky. 21, 288 S.W. 761; *Thompson v. Camp,* 6 Cir., 163 F.2d 396; *Wetherbee v. Elgin J. & E. Ry. Co.,* 7 Cir., 191 F.2d 302. Also see *Stanley's Instructions to Juries,* § 335, page 415. These authorities sustain appellant's proposition, and as the Camp and Wetherbee cases were brought under the Federal Employers' Liability Act, the court on another trial should in appropriate language incorporate this theory in its instruction on the measure of damages.

The judgment is reversed for proceedings consistent with this opinion.

CAMMACK, C. J., dissents on the ground that he does not think the damages are grossly excessive.