W. L. HARPER COMPANY, Inc., et al.,
Appellants,

v.

Cecil SLUSHER, Administrator of the Es-
tate of Donnie Wayne Slusher, Deceased,
and Commonwealth of Kentucky, Depart-
ment of Highways, Appellees.

Court of Appeals of Kentucky.

July 2, 1971.

Robert L. Milby, London, W. M. Cox, Jr., Williamsburg, for W. L. Harper Co. and Harlan Elam.

Roy E. Tooms, Brown, Tooms & Helton, London, R. L. Brown, Williamsburg, for Hoover Inc. and Sam Bolton.

J. C. Helton, Pineville, Lowell W. Lundy, Barbourville, J. B. Johnson, J. B. Johnson, Jr., Williamsburg, for Cecil Slusher.

Gary Crabtree, Dept. of Highways, Somerset, for Dept. of Highways.

REED, Judge.

Donnie Wayne Slusher, a State Highway Department employee, was fatally injured while engaged in the performance of his job at a highway construction site. His personal representative filed a wrongful death action against W. L. Harper, Inc., the prime contractor on the project, and its employee, Harlan Elam; Hoover Inc., a subcontractor on the same project, and its employee, Sam Bolton, were also sued by the personal representative in the same action. The jury returned a verdict for $150,000 against all defendants. Harper, Inc., and Elam filed an appeal from the judgment on the verdict entered against them; Hoover and Bolton filed a separate appeal from the same judgment entered against them. These appeals have been consolidated and considered together.

■ Both sets of appellants insist that they were entitled to directed verdicts in their favor. We will state the facts in the light most favorable to the plaintiff in considering whether a submissible case of negligence was made out; however, we will discuss the possible liability of the two sets of defendants separately.

The accident happened about 12:30 p. m. on a clear, dry day in September 1967 at a construction site in Whitley County. The project was concerned with construction of Interstate Highway 75. At the place of the accident, the highway consisted of two lanes for travel and an emergency lane northbound and two lanes for travel and an emergency lane southbound; a median strip divided the northbound and southbound lanes.

Harper was the general paving contractor and Hoover was subcontractor with a hauling contract. The operation in which the contractors were engaged was the spreading of dense grade aggregate, fine rock, on the lanes of the unfinished highway. Dump trucks and a spreader box which was pushed by a dozer were used to lay the rock. The rock was laid in sections about 12 feet wide, and in one particular lane for a distance of a few hundred feet; the spreader box was then moved backward to another lane by the dozer to the place where spreading had ceased; then the rock was spread forward. In short, a kind of checkerboard system was used to spread the rock in the various lanes of the highway.

At the time of the fatal accident, the spreading work was located in the northbound lane which was immediately adjacent to the northbound emergency lane; the work was to be thereafter moved to the northbound lane nearest to the median strip. The dump trucks, loaded with rock, approached the general work site from the south; they used the southbound portion of the highway. After the trucks reached the actual work site, they crossed the median into the northbound lane at a point ahead of the spreader box. When a particular truck's time came to discharge its load, the truck was backed into the spreader box, the tailgate on the rear of the truck was released, and the body of the truck was raised by a hoist; this procedure allowed the rock in the truck to run into the spreader box. The spreader box was on wheels and the spreader box and the truck were pushed forward by the dozer.

Harper and its employees operated the spreader box and dozer. Hoover and its employees drove the dump trucks which hauled the rocks. Slusher, the deceased, was an employee of the State Department of Highways. His duties were to collect trip tickets from the dump truck driver at the time the particular truck was ready to dump its load into the spreader box; he also generally checked by observation the size of the truck's load. Elam, the employer of Harper, directed the trucks into the spreader; he tripped the tailgate of the truck when it entered the spreader box; he also checked the grade level of the rock as it was spread. Bolton, the employee of Hoover, was the driver of the dump truck that struck Slusher and caused his death.

There was contradictory evidence concerning some particulars about what happened at the time of the accident. The fact finder, however, had the right to believe the following version of what occurred.

Bolton approached the construction site from the south in the southbound lane and crossed the median at the time another truck was dumping its contents into the spreader box which was then located in the northbound lane nearest the emergency lane. Elam and Slusher were standing at the spreader box. Bolton saw them. Elam, by a single motion of his arm, directed Bolton to back into and occupy the northbound lane nearest the median. Whether Slusher saw Elam's signal is not established. Elam tripped the tailgate on the truck at the spreader box; he thereupon left Slusher still at the spreader box and crossed the northbound lane behind Bolton's truck which had then occupied that lane. Bolton saw Elam cross the highway behind his truck. Elam went to a lunch wagon, which was located in the southbound lane, to get a cup of coffee. The lunch wagon was out of coffee and as Elam started back he saw Slusher caught by the wheels of Bolton's truck and he shouted to Bolton to stop. There was another truck north of the spreader box in the same lane in which the box was located. Another truck driven by Orell Haynes was positioned in the lane which Bolton occupied but behind him, and had stopped. Either the truck north of the spreader box was the next truck to be backed into the box, or, if the box was to change into the lane nearest the median, Haynes's truck was next to be backed into the spreader.

Haynes said he saw Slusher near the rear of Bolton's truck on the driver's side. Bolton's truck was stopped. Haynes looked toward the lunch wagon; when he looked back, the truck had struck Slusher and knocked him down. Slusher apparently had moved from the side of the truck to the rear of the truck while Haynes was looking toward the lunch wagon.

The sole eyewitness to the first contact between Bolton's truck and Slusher was Edward Carr. Carr was a dump truck driver who had driven his truck up to the work site and had stopped on the median strip and behind Bolton's truck. Carr said Slusher crossed in front of Bolton's truck from the rear of the spreader and walked down the left or driver's side of the truck. The truck was not moving. Slusher had a clip board with some papers on it and had his head down and appeared to be writing or checking the tickets. He walked around behind Bolton's truck and stopped. He was about two feet away from the rear of the truck. The truck then started moving backward and its right rear tandem wheels caught Slusher's feet, pulled him under and crushed him. He died almost immediately.

Bolton said he did not see Slusher until after the accident. His truck was equipped with outside mirrors on both the left and right sides, but there was a "blind spot" in the truck's rear. According to Bolton, when Elam directed him into the lane nearest the median, he pulled his truck up as directed, stopped it momentarily, then backed it slowly. He did see Elam cross behind his truck when it was stopped. He had made two prior trips to the site on the day of the accident and on prior occasions

he had seen Slusher and Elam together at the spreader.

Slusher was a twenty-year-old high school graduate. He had worked for the Department of Highways for about two years. He had been engaged at this particular work project for about thirty days at the time of his death. His superior had cautioned him to watch the trucks and equipment as their movements could be dangerous. At the time of his death, he had a life expectancy of 49.53 years and he was earning $3,600 per year.

■ We hold that no actionable negligence was shown against Harper and its employee Elam. Elam was not a flagman in the ordinary sense in which such a term is used. Slusher was as familiar with Elam's duties as was Bolton. Elam's action in signaling Bolton into the free lane to wait for his turn at the spreader box was given when Slusher was in a position of safety. If Elam had remained at the spreader box, he could not have observed Slusher's subsequent route and exposure to danger in time to prevent the harm. Surely it was not his duty to remain at the spreader box and physically restrain Slusher from moving his position. It appears to us that under the total evidence, with all favorable inferences which could permissibly be drawn by reasonable men from that picture, Elam's conduct was neither a material element nor a substantial factor in bringing about Slusher's harm. Prosser, Torts (Fourth Ed. 1971), Sec. 41. There was simply no evidence from which actionable negligence on Elam's part could properly be inferred. Therefore, Elam and his employer Harper were entitled to have their motions for judgment notwithstanding the verdict, which were properly preceded by motions for directed verdicts at the conclusion of all the evidence, sustained.

■ We have concluded that Bolton's alleged negligence was a jury issue. The evidence established that Bolton had on prior occasions observed Slusher and Elam at the spreader box performing their jobs. The jury could believe that Bolton saw Slusher and Elam together shortly before the accident. Bolton admitted that he saw Elam cross behind his truck while it was stopped. Elam emerged from the "blind spot." Reasonable minds could differ concerning whether Bolton exercised ordinary care when he backed up without ascertaining that he could do so in safety, under the peculiar factual circumstances. His truck was not the next one due to be serviced by the spreader box. When to back up and the extent of backing were elements within his control. He was aware of the presence of people and the existence of the blind spot at the rear of his truck. The hazard to a person who passed behind a truck of this size when it resumed motion from a stopped position and the motion was in a backward direction was obvious to any experienced truck driver. Whether Bolton exercised ordinary care was properly submitted to the jury.

■ The strongest argument advanced by Bolton and his employer, Hoover, is that Slusher was contributorily negligent as a matter of law. They cite our decision in Ward v. Owensboro River Sand and Gravel Company, Ky., 431 S.W.2d 884. There we held that a workman who walked into a moving truck which was backing up was contributorily negligent as a matter of law. In that opinion we cited Couch v. Holland, Ky., 385 S.W.2d 204, with approval. The Couch case also involved a moving vehicle. "Contributory fault" might be a more descriptive term than "contributory negligence." As Prosser points out, negligence is usually understood to mean conduct which creates an undue risk of harm to others. Contributory negligence is conduct which involves an undue risk of harm to the actor himself. Parker v. Redden, Ky., 421 S.W.2d 586, emphasizes that the inquiry is: Was the plaintiff's conduct unreasonable under the circumstances? If no reasonable and impartial fact finder could escape the conclusion that the conduct was unreasonable, then the

plaintiff is contributorily negligent as a matter of law; otherwise, the question is a jury issue.

■ In this case, the truck was stopped when Slusher encountered it. He could have reasonably believed that since one and probably two trucks would precede it into the spreader box which itself might have to first change lanes, the truck would not back into him without warning. Slusher did not create the hazardous condition and he was injured by an act which occurred subsequent to the time that he stopped behind a stationary truck. If the jury had found Slusher to have been contributorily negligent, we would have left the finding undisturbed. We believe reasonable and impartial men can honestly differ as to whether Slusher's conduct was so unreasonable under the circumstances that it constituted contributory fault on his part to the extent as to bar his estate's right to recover. We hold that in this aspect a jury issue was presented and was properly submitted for the jury's consideration.

■ Hoover and Bolton argue that the amount of the verdict. was excessive. The measure of damages in a wrongful death action in this state is the damage to the estate by the destruction of the decedent's power to labor and earn money. Based on his earnings at the time of his death, if he lived out his life expectancy, Slusher would have earned $178,308. His health and prospects were comparable with other young men of his age and station in life. His employer attested to his satisfactory job performance. The verdict is liberal, but in this particular area the court is always reluctant to attempt an evaluation of so many unpredictable elements in substitution of the jury's evaluation. We cannot say that the size of the verdict is so clearly unreasonable that a court should set aside the jury's finding.

Other alleged errors raised in the Harper and Elam appeal have not been discussed. They are not raised in the Hoover and Bolton appeal. In any event, we find that they did not constitute reversible error and do not merit discussion.

■ A joint verdict against two sets of defendants in tort (employer and employee) may be set aside as to one set, and the full amount of the judgment left standing against the other set. Cf. Louisville Southern Ry. Co.'s Receivers v. Tucker's Adm'r, 105 Ky. 492, 49 S.W. 314; also see McGee v. Vanover, 148 Ky. 737, 147 S.W. 742.

The judgment insofar as it imposes liability on W. L. Harper Company, Inc., and its employee, Harlan Elam, is reversed with directions that the action be dismissed as to each of them. The remainder of the judgment which imposes liability in the amount found by jury against Hoover, Inc., and its employee, Sam Bolton, is affirmed.

All concur.