**GREEN RIVER ELECTRIC CORPORATION,**
Appellant,

v.

Sandra Lee NANTZ, Administratrix of the Estate of John Wesley Nantz, Deceased, Appellee.

No. 93–CA–001935–MR.

Court of Appeals of Kentucky.

March 10, 1995.

As Modified March 17, 1995.

Charles E. English, D. Gaines Penn, English, Lucas, Priest & Owsley, Bowling Green, for appellant.

Max S. Hartz, McCarroll, Nunley & Hartz, Owensboro, Scott T. Dickens, Louisville, for appellee.

Before EMBERTON, GARDNER and JOHNSON, JJ.

JOHNSON, Judge:

Green River Electric Corporation (Green River) appeals from a judgment entered by the Daviess Circuit Court in favor of Sandra Lee Nantz (Sandra), administratrix of John Wesley Nantz' estate, that accepted a jury verdict in a wrongful death action in the amount of $480,307.00. We affirm.

On July 12, 1990, at approximately 3:45 p.m., the decedent, John Nantz (John), and his two children went to the Whitesville playground in order to prepare the ball field for a game that evening. John, who was six feet tall, was pushing a wheelbarrow between two ball fields when the top of his head came into contact with a 7200 kv[1] electric power line hanging approximately five feet seven inches from the ground. As a result, he was electrocuted to death. Green River owned, operated and maintained the power line. Computer monitoring at Green River's offices indicated a permanent fault occurring on the line at approximately 3:42 a.m. on that same day. Despite knowledge of the fault, Green River immediately re-energized the line by computer without a visual inspection which would have revealed the fallen line.

John was twenty-eight years old, married, and the father of two children at the time of his tragic death. He had a high school education and work experience as a truck driver, diesel mechanic and welder. At the time of his death, John had a workers' compensation claim pending for injuries he received on April 13, 1989, when a mixing truck he was driving for Concrete Services overturned. His work-related injuries included injuries to his left arm, the radial nerve in his left wrist and his lower back. He received $10,000.00 in temporary total benefits before filing his workers' compensation claim. He had not returned to work at the time of his death. On November 14, 1990, Sandra settled the workers' compensation claim based on a fifty-percent permanent partial disability for $29,456.25.

On September 21, 1990, Sandra, individually and as the administratrix of John's estate, filed a wrongful death action against Green River and two other parties.[2] As part of her pretrial motions, she filed a motion in limine to exclude evidence of the workers' compensation settlement from being presented to the jury. In support of her motion, she argued that the workers' compensation benefits were paid as a result of an injury distinct from the wrongful death action and that evidence of the fifty-percent occupational dis-

1. A kv is kilovolts.

2. The claim against the other two parties was a products liability claim. One defendant was dis-

missed prior to trial, and the jury found no liability against the other defendant.

ability used in the parties' settlement agreement would be highly prejudicial and confusing to the jury. Green River argued that the workers' compensation settlement bore a direct relationship to the decedent's earning capacity and that it was admissible. Specifically, Green River argued that such evidence was a relevant and necessary factor to be considered by plaintiff's vocational expert to determine the decedent's vocational disability. The trial court granted Sandra's motion to exclude this evidence, and stated as part of its order as follows:

> As a general rule, evidence of compromises or settlement agreements are inadmissible at trial because the law looks with favor upon settlement of controversies. *Whitney v. Penick,* Ky. [281 Ky. 474], 136 S.W.2d 570 (1940). Furthermore, throughout judicial history the law has favored out-of-court settlements, and therefore, will not allow a compromise or an offer thereof to be used adversely against the party making the offer. *Elam v. Wooley* [*Woolery* ], Ky., 258 S.W.2d 452 (1953). The Court believes that the workers' compensation statute set out in KRS 342.125(3) ° is a reflection of the notion that offers of settlement and settlement agreements are inadmissible at trial.

> The Court is of the opinion that the *work-related injury* is what may affect the deceased's power to earn money and *not the settlement agreement* rendering the deceased fifty percent (50%) occupationally disabled. Therefore, the defense may not introduce into evidence the settlement agreement entered into after the death of John Wesley Nantz. However, the defense may introduce into evidence the fact that an injury had occurred and that a workers' compensation claim was pending. (emphasis original).

Green River filed a motion for reconsideration of this ruling which was denied.

At trial, the circuit court allowed Green River to introduce evidence regarding the decedent's work-related injury, his pending workers' compensation claim and the dollar amount of the settlement recovered for his claim. The trial court refused Green River's request to introduce the settlement agreement document or the fifty-percent permanent partial disability figure for impeachment of Sandra or her vocational expert.

The jury verdict found Green River 100% liable for John Nantz' death and awarded damages in the amount of $480,307.00. The trial court entered an order accepting the jury's verdict. Green River's motion for a judgment notwithstanding the verdict, or in the alternative, motion for a new trial was overruled. This appeal followed.

On appeal, Green River does not raise any issues as to the liability determination. It claims that the trial court committed reversible error by not allowing the decedent's workers' compensation fifty-percent permanent partial disability settlement figure to be introduced as evidence; and that this error resulted in the award of excessive damages.

■ Our standard of review in this matter is well-summarized in *Transit Auth. v. Vinson,* Ky.App., 703 S.W.2d 482 (1985):

> Relevancy "is a determination which rests largely in the discretion of the trial court...." *Glens Falls Insurance Company v. Ogden,* Ky., 310 S.W.2d 547 (1958). However, the trial court possesses the power to exclude relevant evidence "if its probative worth is outweighed by the threat of undue prejudice to the opposing party." R. Lawson, *The Kentucky Evidence Law Handbook,* § 2.00 at 21 (2nd ed. 1984). This court will not disturb a lower court's discretionary ruling on appeal absent an abuse of discretion. *Id.* at 22. *See also Tumey v. Richardson,* Ky., 437 S.W.2d 201 (1969).

703 S.W.2d at 484.

Furthermore, KRE 103(a) provides that "[e]rror may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected...."

"'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." KRE 401. "Evidence which is not relevant is not admissible." KRE 402.

The High Court of Kentucky ruled long ago that "an offer of compromise is not admissible as evidence upon the trial of a case." A desire to encourage settlement of disputes was the rationale for adopting this rule. The High Court also ruled long ago that completed compromises (i.e., settlements) are no more admissible than offers of compromise, also for the purpose of encouraging dispute resolution by agreement.... The Federal Rules expanded the protection for offers of compromise to include "conduct or statements made in compromise negotiations" and KRE 408 follows the lead of its federal counterpart. (footnotes omitted).

Robert G. Lawson, *The Kentucky Evidence Law Handbook* § 2.50 p. 134 (3d ed. 1993).

"Evidence of ... [a]ccepting ... a valuable consideration in compromising ... a claim which was disputed as to ... amount[ ] is not admissible to prove liability for ... the ... amount." KRE 408. The official commentary to KRE 408 in referring to the preceding quote states: "The law has long fostered voluntary dispute resolution by protecting against the possibility that a compromise or offer of compromise might be used to the disadvantage of a party in subsequent litigation." *See also Wolf Creek Collieries Company v. Davis*, Ky., 441 S.W.2d 401 (1969).

It is the duty of the courts to encourage rather than discourage amicable settlements as a mode of adjusting justiciable differences no matter that one party may have got the best of the bargain. Therefore, such settlements ought not to be allowed later to prejudice any party to them or bind him as an admission of liability in an encounter with one not a party to the settlement.

*Whitney v. Louisville & N.R. Co.*, 296 Ky. 381, 385, 177 S.W.2d 139, 141 (1944).

"The measure of damages in a wrongful death action in this state is the damage to the estate by the destruction of the decedent's power to labor and earn money." *W.L. Harper Company v. Slusher*, Ky., 469 S.W.2d 955, 959 (1971). In *Temperly v. Sarrington's Adm'r.*, Ky., 293 S.W.2d 863 (1956), the former Court of Appeals reiterated that "[i]n estimating compensatory damages, we

have frequently held that the jury has a right to receive evidence on such elements as decedent's age, occupation, health, habits, accumulations, mental and physical ability and such evidence is not confined to earnings at the exact time he met his death." *Id.* at 869 (citations omitted).

We cannot see how the permanent partial disability settlement figure could possibly be relevant in proving destruction of decedent's power to earn money considering the workers' compensation law of this state. The percentage of occupational disability contained in a workers' compensation settlement is not even conclusive upon the reopening of the same workers' compensation claim. *Beale v. Faultless Hardware*, Ky., 837 S.W.2d 893, 896 (1992). "The disability figure contained in a settlement agreement is a negotiated figure and may or may not equal the claimant's actual occupational disability." *Newberg v. Davis*, Ky., 841 S.W. 2d 164, 166 (1992). We agree with the trial court that the effects of the decedent's injury, not the percentage of occupational disability agreed to for settlement purposes, is relevant to decedent's power to earn money. *See Davis, supra; Faultless Hardware, supra.* Therefore, in accordance with KRE 408, the permanent partial disability figure agreed to in the parties' settlement agreement was not relevant evidence in the case at bar, and consequently was inadmissible.

The cases of *Heskamp v. Bradshaw's Adm'r.*, 294 Ky. 618, 172 S.W.2d 447 (1943), and *Krakar v. Don Swart Trucking, Inc.*, 323 F.Supp. 157 (W.D.Pa.1971), that are relied on by Green River are easily distinguishable from the case *sub judice*. Those decisions involved only the admission into evidence of the amount of benefits received and not the terms of the awards; and the admission into evidence of the amount of the benefits received was sought by the plaintiff to establish that the estate of the decedent in the wrongful death action had been damaged in the amount of the benefits that would no longer be received during the life of the decedent. In the case at bar, the trial court admitted into evidence the fact that the decedent had a pending workers' compensation claim at the time of his death, the extent of his injuries,

as well as the amount received as a settlement for his claim. While we disagree with the correctness of the trial court's rulings as it related to the admission of the amount received, this was not appealed by Sandra.[3]

■ Green River, citing KRE 408, also contends that the trial court erred by denying its request to introduce the settlement agreement to impeach the testimony of Sandra Nantz. Green River maintains that Sandra testified her husband was in good health; planning on returning to work; could do anything; and in her opinion did not have a permanent disability. Furthermore, Green River contends that this testimony is contrary to the workers' compensation settlement document which Sandra executed providing for a settlement based upon the decedent being fifty-percent permanently occupationally disabled. In response, Sandra argues that before a witness may be impeached she must make a statement which is contrary to her earlier statement. KRE 613. She maintains that her testimony was not inconsistent with the settlement document.

After reviewing the record, we conclude that Sandra's testimony did not provide Green River with grounds for impeachment. She admitted that the decedent had a permanent injury and testified that, *aside from his injury*, he was doing great. Her testimony was consistent with the settlement agreement she executed.

■ Green River also argues that the circuit court erred by denying its request to use the workers' compensation settlement for impeachment of plaintiff's vocational expert, John Tierrany. Green River maintains that it could not adequately challenge Tierrany's conclusions regarding the decedent's loss of the power to earn money. Specifically, Green River maintains that it was necessary for them to question Tierrany about his ability to form his conclusions when he did not consider the fifty-percent occupational disability stated in the decedent's workers' com-

pensation settlement. Sandra argues that the decedent's injuries were relevant, not the percentage of occupational disability contained in the parties' settlement agreement, to the determination of the decedent's impairment of the power to earn money. Moreover, she argues that Tierrany did not testify regarding the decedent's occupational disability and that her testimony did not open the door for him to be cross-examined on this issue.

The fifty-percent occupational disability provided for in the decedent's workers' compensation settlement was not relevant to Tierrany's conclusions. He did not base his opinion on this figure, nor should he have done so; and he did not testify regarding the decedent's degree of occupational disability. Accordingly, there were no grounds for using the settlement agreement to impeach Tierrany's testimony.

Finally, Green River argues that the circuit court misinterpreted the application of KRS 342.125. Green River argues that this provision applies exclusively to situations where an employer or employee has reopened a workers' compensation claim and that it has no bearing on whether such evidence should be admissible in a wrongful death action. KRS 342.125 expressly states that it applies upon the reopening or review of a workers' compensation settlement. While the case at bar does not involve the reopening or review of a workers' compensation claim by the administrative law judge, we view the trial court's reference to KRS 342.125 merely to indicate that its ruling was consistent with KRS 342.125, not based on it.

In sum, we hold that the rulings of the Daviess Circuit Court concerning the inadmissibility of the decedent's fifty-percent permanent partial disability settlement figure from the workers' compensation claim were correct as a matter of law since this settle-

---

3. The benefits from the workers' compensation settlement for the prior work injury were not related to John's wrongful death claim and were not collateral source payments under KRS 411.188. *See* 22 Am.Jur.2d, *Damages* § 566 to 590.

ment figure was not relevant evidence in determining the destruction of the decedent's power to labor and earn money. We affirm.

GARDNER, J., concurs.

EMBERTON, J., concurs in result only.

All concur.