Daniel L. AULL and Frances S. Aull, both Individually as the Surviving Parents of, and as Personal Representatives for, William Daniel Blake Aull, Deceased, Appellants,

v.

John T. HOUSTON, M.D.; Robert Huxol, D.O.; and Emergency Physicians Group, P.S.C., Appellees.

No. 2008–CA–001238–MR.

Court of Appeals of Kentucky.

May 7, 2010.

Rehearing Denied Sept. 29, 2010.

David L. Yewell, Owensboro, KY, for appellants.

Richard P. Schiller, Kimberley S. Naber, Louisville, KY, for appellee, John T. Houston, M.D.

Craig L. Johnson, Louisville, KY, for Appellee, Robert Huxol, D.O.

Before ACREE and CLAYTON, Judges; HARRIS,[1] Senior Judge.

## OPINION

ACREE, Judge.

Appellants seek reversal of the Daviess Circuit Court's grant of partial summary judgment relating to certain elements of Appellants' damages claim. For the following reasons, we affirm.

This case began as an action both for personal injury and for the wrongful death of William Blake Aull (Blake) that allegedly resulted from treatment rendered by Appellees. Blake was born on October 13, 1994. In early infancy he was alert, responsive, had good head control, vocalized frequently, and smiled responsively. At around five months Blake's pediatrician noted twitching movements on Blake's left side. Blake was soon referred to a pediatrician and neurologist at the University of Louisville.

An extensive examination revealed a seizure disorder, significant muscular hypotonia, regression of his development status and decreased visual responsiveness. The neurologist concluded that his findings were consistent with Leigh's disease and informed Blake's family that the prognosis was extremely poor; early onset of the disease is generally associated with death in early childhood and Blake's long term survival was unlikely. Worst of all, a definitive treatment for Leigh's disease is unavailable. In the following years Blake received treatment from physicians in multiple states.

On September 8, 2000, Blake began to experience complications after receiving certain immunizations. A series of emergency room and doctor's office visits occurred over the next four days. On September 12, 2000, Blake passed away at the age of five. The ultimate cause of death was pneumonia and diffuse encephalopathy. Appellants brought suit in Daviess Circuit Court to determine whether Appellees were liable for Blake's death.

However, liability is not the subject of our review as that issue has not been determined yet at the trial court. Our only focus is the availability of certain categories of damages.

Appellants sought recovery of damages for Blake's pain and suffering prior to his death, his medical expenses prior to death, his funeral expenses, and his parents' loss of Blake's affection. Appellees did not challenge the legal availability of these categories of damage. However, they succeeded in obtaining a partial summary judgment prohibiting Appellants' recovery of damages for Blake's death itself, for Blake's loss of earnings prior to his death, and for Blake's loss of future earning capacity. This appeal followed.[2]

Our role in reviewing a grant of summary judgment or partial summary judgment is to determine whether the circuit court correctly found that no genuine issue exists as to any material facts and whether based on such facts appellees are entitled to judgment as a matter of law. *Scifres v. Kraft*, 916 S.W.2d 779, 781 (Ky.App.1996). A grant of summary judgment is reviewed *de novo*. *Pinkston v. Audubon Area*

1. Senior Judge William R. Harris sitting as Special Judge by assignment of the Chief Justice pursuant to Section 110(5)(b) of the Kentucky Constitution and Kentucky Revised Statute (KRS) 21.580.

2. By order entered June 5, 2008, the Daviess Circuit Court certified for purposes of appeal its April 23, 2008 order granting the partial summary judgment in favor of Appellees regarding the legal availability of these categories of damages.

*Cmty. Services, Inc.*, 210 S.W.3d 188, 189 (Ky.App.2006).

Dismissing the claim for damages for "Blake's death," separate and apart from the statutory claim for wrongful death pursuant to KRS 411.130, was proper. *Giuliani v. Guiler*, 951 S.W.2d 318, 322 (Ky.1997)("Damages in the wrongful death statute compensate for loss of the deceased's earning power and do not include the affliction to the family as a result of the wrongful death."). Appellants do not challenge that part of the partial summary judgment.

In fact, Appellants do not challenge the partial summary judgment even to the extent it relates to their claim for income Blake may have lost prior to his death. The reason is obvious. Blake was five years old when he died and was earning no income.

■ Appellants concentrate their challenge of the partial summary judgment on its elimination of their claim for the destruction of Blake's future earning capacity. Appellants claim the trial court erred by finding that, even when the evidence is viewed in a light most favorable to them, they could not prove Blake suffered any destruction of earning capacity. The two arguments they present are: (1) Kentucky law presumes Blake, like every child, possesses the capacity to earn a living in the future, and (2) the destruction of the power to earn money should include loss of the decedent's entitlement to receive state and federal disability benefits. The first of these arguments is, in essence, an argument that there was sufficient evidence to create a genuine issue of fact regarding Blake's ability to earn wages. The second presents a legal argument that, for pur-

poses of determining damages for wrongful death, the receipt of benefits from a government entitlement program is the equivalent of earning a wage. For the following reasons, we do not find Appellants' arguments persuasive.

Citing *Turfway Park Racing Ass'n v. Griffin*, 834 S.W.2d 667 (Ky.1992), Appellants first argue that "[t]here is an *inference* that the child [who dies in infancy] would have had some earning power[.]" *Id.* at 671; *see also Rice v. Rizk*, 453 S.W.2d 732, 735 (Ky.1970)("inference that the child would have had some earning power"). However, this inference was justified in *Turfway* because

> there was no evidence that the decedent was other than a normal four-year-old boy and certainly no evidence of a disability so profound as to render him incapable of earning money upon reaching adulthood.

*Id.; see also, George v. Evans*, 405 S.W.2d 285, 288 (Ky.1966) (8–year–old "deceased was well and healthy and that was sufficient to support the $8,000 verdict"), *and Phillips' Committee v. Ward's Adm'r*, 241 Ky. 25, 43 S.W.2d 331, 335 (1931) (decedent minor was "in good health, and possessed of a substantial earning power"). In the case before us, Appellants admitted that Blake's disability was so profound as to render him incapable of ever earning money by his labor.[3] Under such circumstances, the inference that Blake, someday, would have the ability to "earn" money is simply, and sadly, unreasonable. It was not error for the trial court to conclude that Blake was unable to earn money " 'by labor, service, or performance' or 'to gain or get [money] in return for one's labor or

---

3. "Blake was unable to walk, talk, feed himself, dress himself, write, bathe himself, brush his teeth, or tie his shoes. He was not diaper trained, he could not breathe without the as-

sistance of a trach[eostomy tube], and he was fed through a stomach tube." Partial Summary Judgment, April 23, 2008, p. 3.

service.'" (Order, entered April 23, 2008, page 3, *quoting* BLACK'S LAW DICTIONARY 547 (2004)). Therefore, Appellees were entitled to summary judgment on the issue, unless the receipt of the benefits of a government entitlement is the legal equivalent of earning a wage. This brings us to Appellants' second argument.

■ We note first that "[t]he measure of damages in a wrongful death action in this state is the damage to the estate by the destruction of the decedent's *power to labor and earn money.*" *W.L. Harper Company v. Slusher,* 469 S.W.2d 955, 959 (Ky.1971) (emphasis supplied). Appellants admit Blake never possessed the "power to labor and earn money." Logically, there can be no recovery for the destruction of that which never existed. Notwithstanding these facts, Appellants urge us to find that an entitlement received because of one's disability is the equivalent of income earned as a result of one's labor.

Appellants refer us to *Heskamp v. Bradshaw's Adm'r,* 294 Ky. 618, 172 S.W.2d 447 (1943), and *Louisville & N.R. Co. v. Young's Adm'x,* 253 S.W.2d 585 (Ky.1952), to support their position that a jury may consider damages for wrongful death as including the decedent's loss of income other than that acquired by labor, service, or performance. However, these cases predate the clear articulation of the measure of damages for a wrongful death claim stated in *Slusher* that focuses on the destruction of the decedent's "power to labor." Additionally, a closer reading demonstrates that the award of damages in both *Heskamp* and *Young's Adm'x* replaced income that was earned or would have been earned through the decedent's power to labor.

It is a fact that in *Heskamp* the jury was allowed to consider as damages the loss of the decedent's pension, but the reason given for allowing it was that "[t]he decedent had *earned* the pension *by his services* in the past[.]" *Heskamp,* 172 S.W.2d at 451 (emphasis supplied). The pension was not merely a replacement of income; it was deferred income, previously earned when the decedent did have the power to labor. *Holman v. Holman,* 84 S.W.3d 903, 907 (Ky.2002) ("Pension and retirement benefits ... constitute deferred compensation for services rendered"). Blake did not "earn" disability benefits. *Flemming v. Nestor,* 363 U.S. 603, 610, 80 S.Ct. 1367, 4 L.Ed.2d 1435 (1960) (Congress did not "engraft upon the Social Security system a concept of 'accrued property rights[,]'" nor are these benefits "earned" in any way.).

Appellants also cite *Young's Adm'x* for the proposition that, under the Federal Employers' Liability Act "the dependents of the deceased are entitled to recover for the loss of pecuniary benefits which they had a reasonable expectation of receiving from him had he not been killed." *Young's Adm'x,* 253 S.W.2d at 588–89; *but see, Roland v. Beckham,* 408 S.W.2d 628, 635 (Ky.1966) ("quantum of damages recoverable under the Federal Employers' Liability Act ... is substantially different from the measure of damages for wrongful death under KRS 411.130."). But the "pecuniary benefits" involved in that case were not social security benefits or even a pension or retirement; they were, instead, the salary the decedent had earned from his employment "as a laborer in" the railroad's yards. *Young's Adm'x* at 588. The decedent in *Young's Adm'x* was neither disabled nor retired but 32 years old and working at the time of his death. Appellants thus read both *Young's Adm'x* and *Heskamp* too broadly.

Appellants acknowledge that Kentucky case law has yet to directly address whether a jury should be allowed to consider the potential availability of social security dis-

ability benefits for the purposes of determining lost earning capacity in a wrongful death action. Indeed, the only guidance in Kentucky jurisprudence is the *absence* of the argument in wrongful death cases in which one would expect to see it asserted and addressed by the court. One such case is *Smith v. McCurdy*, 269 S.W.3d 876 (Ky.App.2008), *disc. rev. denied* Dec. 10, 2008. The case involved an elderly woman who, at the time of her death, possessed no power to earn money because of physical disabilities. *Id.* The court determined that the value of that wrongful death claim would be zero because she had no capacity to earn a wage; *i.e.,* she had no power to labor. *Id.* at 882. The court did not mention or consider the decedent's actual or potential receipt of social security benefits in making its determination. *Id.* The Court did, however, reiterate the rule originally stated in *Slusher.*

> While it appears overly harsh and more than a bit cold in the case at hand, and for that matter any case dealing with the death of an individual who no longer has [or in the case now before the Court, never did have] the capacity to earn income, under existing Kentucky law damages for a wrongful death claim are based on the destruction to the decedent's *power to labor and earn money.*

*Smith,* 269 S.W.3d at 882 (emphasis supplied).

■ We are aware that one federal court, applying Kentucky law, recently addressed "the proper interpretation of the 'the power to earn money' standard." *Meinhart v. Campbell,* 2009 WL 4508579 *2, No. Civ.A. 307CV465–H (W.D.Ky. Dec. 01, 2009).[4] After considering Kentucky's wrongful death statute and the Kentucky cases of *Heskamp* and *Turfway,* and certain case law from other jurisdictions, the federal court "predict[ed] that Kentucky would not exclude Social Security disability benefits in determining the damages to [the decedent's] estate." *Id.* at *3 (footnote omitted). We are not bound, however, by the federal court's prediction. *LKS Pizza, Inc. v. Com. ex rel. Rudolph,* 169 S.W.3d 46, 49 (Ky.App.2005) ("we are not bound by a federal court's interpretation of state law"), *citing Embs v. Pepsi–Cola Bottling Co.,* 528 S.W.2d 703, 705 (Ky. 1975). Moreover, we are persuaded by the sound analysis in the partial summary judgment; consequently, we hold that the trial court was correct in declining to consider Blake's speculative receipt of disability benefits as proof of the destruction of his power to labor and earn money.

With all due respect to the federal court, *Meinhart* appears not to have considered the clear language of *Slusher, supra,* that juxtaposes the decedent's "power to labor" on the one hand and the "earn[ing of] money" on the other in a cause-and-effect relationship. Conversely, the trial court in the case before us did consider *Slusher,* albeit indirectly. Relying on *Birkenshaw v. Union Light, Heat and Power Co.,* 889 S.W.2d 804 (Ky.1994),[5] the trial court concluded that the measure of damages in this case is "the value of the destruction of the

---

**4.** *Meinhart* was designated as "unpublished." However, in accordance with Federal Rule of Appellate Procedure (FRAP) 32.1, "A court may not prohibit or restrict the citation of federal judicial opinions, orders, judgments, or other written dispositions that have been: (i) designated as "unpublished" ... and (ii) issued ... after January 1, 1997." While Kentucky courts are not bound by FRAP 32.1, the federal judiciary has determined that all

of its opinions rendered after January 1, 1997, have equally persuasive import without regard to their designation as unpublished. We should take no less a view of those unpublished opinions.

**5.** The trial court miscites this case as *Bradshaw v. Union Light, Heat and Power Co.,* 899 S.W.2d 804 (Ky.1994).

power of the decedent to earn money." *Birkenshaw,* 889 S.W.2d at 806 (internal quotation marks and citation omitted). The court continued, "One does not earn disability benefits. Indeed, [the] Court of Appeals stated that the standard is 'the destruction of the decedent's power to *labor and earn money.*' *Green River Elec. Corp. v. Nantz,* 894 S.W.2d 643, 646 (Ky. App.1995) (emphasis added)." (Order, entered April 23, 2008, page 3). Though the trial court quoted only *Nantz,* the Court of Appeals was, in fact, quoting *Slusher. Nantz,* 894 S.W.2d at 646.

The trial court further referenced the dicta first expressed by the Supreme Court in *Turfway,* and later repeated in *Reffitt v. Hajjar,* 892 S.W.2d 599 (Ky.App. 1994), that a claim to recover damages for destruction of the power to labor and earn money would be defeated by evidence "of a disability *so profound* as to render him [the decedent] incapable of earning money upon reaching adulthood." *Reffitt,* 892 S.W.2d at 603 (emphasis in original), *quoting Turfway* at 671. The case before us is just such a case as was foreshadowed by the dicta of *Turfway* and *Reffitt.* When presented with the precise issue, the trial court here correctly applied the principle just as the appellate courts had anticipated.

Because damages under KRS 411.130 are measured by the loss resulting from the destruction of the decedent's power to labor, and because Blake experienced no destruction of his power to labor at the hands of the Appellees, Appellants cannot recover damages for the destruction of his power to labor and earn money under KRS 411.130.

Finally, we address Appellants' concern that the trial court's order appears to "extinguish [all claims] for personal injuries Blake suffered prior to his death (medical bills, pain and suffering)". We believe this concern to be unjustified.

Appellees acknowledge that "no dispositive motions were filed relating to damages for personal injury." Furthermore, the trial court granted and this Court now affirms the "dismissal of Plaintiffs' claims for damages arising from (1) Blake's death, (2) Blake's loss of earnings, and (3) the destruction of Blake's earning capacity." (Partial Summary Judgment, April 23, 2008, p. 2). There is nothing in the partial summary judgment that should reasonably lead one to conclude that Appellants were precluded from pursuing all other claims. Nevertheless, to eliminate any controversy, we hold that nothing in the record to date prohibits the Appellants' continued pursuit of all categories of damages available pursuant to KRS 411.133 and KRS 411.135, except those damages specifically addressed in this opinion; *i.e.,* damages for "the affliction to the family as a result of the wrongful death[,]" *Giuliani, supra,* Blake's loss of earnings, and the destruction of Blake's power to labor and earn money.

For the foregoing reasons, the partial summary judgment of the Daviess Circuit Court is affirmed.

ALL CONCUR.